(Decided December 6th, 1895.)

# BERNARD THILLMAN *vs.* LUTHER B. BENTON.

*What Constitutes a Partnership—Participation in Profits—Evidence— Agency.*

The mere fact that a person has a right to participate in the profitsf of a business carried on in the names of other persons does not o itself make such person a partner, but it is an important circumstance to be considered in connection with others for the purpose of ascertaining whether a partnership exists or not.

When two or more persons agree to carry on a business with the right to share in the profits of the same, such a contract generally constitutes a partnership unlesss there be other facts which show that some other relation existed between the parties. And if there be a partnership in fact, then the public has a right to assume that each partner is authorized to bind the whole firm by contracts made according to the usages of the trade.

Whether a partnership exists or not is a question of substance and not of the mere form of the agreement. If persons, under the guise of an arrangement as creditors of others are really trading as principals, and putting forward as the ostensible traders the latter, who are really agents, then the former will be treated as partners or principals.

An agreement in writing between the defendant and persons carrying on a business under a certain firm name, recited that the firm needed additional capital, which defendant agreed to contribute, and it was stipulated that after the payment of the expenses the firm should

pay to the defendant for the use of said sum an amount equal to one-third of the net profits, and at the end of one year the principal sum so advanced by the defendant was to be repaid. The contract also provided that defendant should have free access to all books and accounts. The defendant carried on his own different business in another part of the city and took no part in the management of the firm's affairs, except to examine the books occasionally and to advise as to the conduct of the business. In an action by a creditor of the firm seeking to hold defendant liable as a partner, *Held*,

1st. That this contract did not create a partnership as to third persons, but was an agreement for the loan of money and created the relation of debtor and creditor.

2nd. That in the absence of any evidence showing that defendant ever held himself out as a partner, the question whether he was in fact a partner depended upon the construction of the written agreement.

3rd. That evidence of the declarations and admissions of one of the members of the firm was not admissible to prove that defendant was a partner.

Appeal from the Court of Common Pleas of Baltimore City. Assumpsit by appellant on an open account against " F. H. Von Hafften, L. B. Benton and J. W. Gailey, trading as The Sanitary Milk Co." The contract referred to in the opinion of the Court is as follows :

" This agreement, made this 24th day of April, between Frederick Hundt Von Hafften and James W. Gailey, trading under the style of the Sanitary Milk Company of Balti more City, parties of the first part, and L. B. Benton, of the city of Baltimore and State of Maryland, party of the second part, witnesseth : Whereas, the parties of the first part are desirous of securing additional capital for the purpose of carrying on the said business, and the party of the second part is willing to contribute the amount so desired, namely, two thousand (2,000) dollars, upon the following terms and conditions : First. That the said Frederick Hundt Von Hafften is to render his services in the said business as general manager of the same, and is to receive for the services so rendered the sum of fifteen (15) dollars per week. Second. That after paying all expenses from the said business, the said parties of the first part to pay unto the said party of

the second part, for the use of the said two thousand (2,000) dollars, amount equal to one-third of the net profits arising out of said business. Third. This contract is to remain in force for one year from even date, and at the expiration of said year, the said parties of the first part will pay unto the said party of the second part his two thousand (2,000) dollars, and his share of the profits, as stated. It is further agreed and understood that if the said party of the second part shall desire to continue in the said business for another year after the expiration of the first, and this contract shall remain in force subject to all the conditions and agreements as herein set forth. It is further agreed and understood that neither party shall withdraw any money whatsoever from the said business during the continuance of this contract, save and except the weekly salary of fifteen (15) dollars, an amount which shall be consumed as general expenses for carrying on the said business as herein set out. It is further agreed and understood that at the expiration of this contract, no moneys whatsoever shall be withdrawn until the said party of the second part shall have received his full amount of two thousand (2,000) dollars, as invested by him under this agreement, except with and by the consent of party of the second part. It is further understood that the said party of the second part shall, at all times during the business hours, have free access of all books and accounts, and all papers pertaining thereto, during the business hours of the day. Be it further understood that this agreement is to last one year from this date, and that the parties of the first part agree that all or any pre-existing contracts made shall in no way affect this contract of this date. Witness our hands and seals, this 24th day of April, 1894," etc.

At the trial one of the defendants, Von Hafften, an admitted member of the firm of the Sanitary Milk Company, was called to the stand and asked the question, "Who composed the firm of the Sanitary Milk Company from April 24, 1894?" To this the defendant objected, on ground that

witness should first be asked whether the articles of partnership were in writing, and witness having answered that they were, defendant objected to witness answering question. insisting that the writing should be produced or its absence accounted for.    To the ruling of the Court below by which this objection was sustained, the plaintiff's first exception was taken.    The second exception was noted to the action of the Court in permitting the witness, Gailey, to be asked on cross-examination if he had not represented to the defendant, Benton, before the agreement was signed, that the old firm was making large profits.

At the close of the testimony, the Court below (PHELPS, J.), at the instance of the defendant, instructed the jury that there was no evidence legally sufficient to show that the defendant, Benton, was a partner in the Sanitary Milk Co., even as to the third parties, and that therefore their verdict must be for the defendant.    The following prayers offered by the plaintiff were rejected :

*Plaintiff's First Prayer.*—If the jury believe from all the evidence in this cause that prior to the contracting of the debt sued for in this cause, a partnership existed between the defendant, Luther B. Benton, and a certain Frederick Hundt Von Hafften and James N. Gailey, under the firm name of the Sanitary Milk Company, for the purpose of carrying on a dairy business in Baltimore City, and that no notice of dissolution was given to the public by publication or otherwise, or that the plaintiff had not notice in some other way of such dissolution ; and shall further find the plaintiff sold to said Frederick Hundt Von Hafften (as one of the partners of the said Luther B. Benton, trading under said firm name), the goods for which this suit was instituted, and without any knowledge of dissolution of said firm, if there was a dissolution, then the plaintiff is entitled to recover.    (Rejected.)

*Plaintiff's Second Prayer.*—If the jury find from the evidence that the defendant executed the articles of agreement of April 24th, 1894, read in evidence ; and shall further find

that the same was acted upon by the parties thereto, and that the business was carried on under the name of the Sanitary Milk Company ; and shall further find that the said Frederick Hundt Von Hafften, one of the parties to said agreement, and as the general manager of said business and a partner therein represented to the plaintiff (with the knowledge, authority, acquiesence or consent of said Benton), at or before the time of the furnishing of the goods and materials in question, that said Benton was a partner in the concern, trading under the name of the Sanitary Milk Company, and had contributed $2,000 to the capital thereof, whereupon said plaintiff was induced to extend credit to said concern, if they so find, then the plaintiff is entitled to recover. (Rejected.)

*Plaintiff's Third Prayer.*—If the jury believe from the evidence that the concern known as the Sanitary Milk Company was conducted by said Frederick Hundt Von Hafften, as general manager thereof, under an arrangement with the defendant, Benton, and another ; and shall further find that said Benton was interested in the management and profits of said concern, with a proprietary interest therein or as part owner thereof; and shall further find that said Von Hafften as such general manager, and as the representative of said defendant, Benton, and the others, represented to the plaintiff, at or before the sale and delivery of the goods in question, that said Benton was backing them with money and was largely interested in the said business, whereupon said plaintiff was induced to extend the credit to same concern, if they so find, then the plaintiff is entitled to recover. (Rejected.)

*Plaintiff's Fourth Prayer.*—If the jury find from the evidence that the defendant executed the articles of agreement dated April 24th, 1894, read in evidence ; and shall further find that thereafter business was carried on under the said articles of agreement in the name of the Sanitary Milk Company, and that while so carrying on said business if they so find the goods in question were furnished, and the work was

done by the plaintiff for said Sanitary Milk Co., if they so find, then by the true construction of said articles of agreement the defendant is liable to the plaintiff for such sum as the jury may find the goods and materials furnished, and the work done to be reasonably worth.    (Rejected.)

The cause was argued before ROBINSON, C. J., BRYAN, McSHERRY, FOWLER, BRISCOE, ROBERTS and BOYD, JJ.

*Hyland P. Stewart*, for the appellant.

*John V. L. Findlay* and *Vernon Cook* (with whom was *Thomas Mackenzie* on the brief), for the appellee.

Under the written agreement between the parties the money advanced by Benton was to be repaid at all events. It was therefore a loan.   If the repayment had been made dependent upon profits or upon the partnership funds, then the contract might have created a partnership.   Since this paper did not create a partnership, then the partnership, if it exists at all, must have been created by estoppel, arising out of the acts of Benton.   In examining the books and papers of the company, Benton only did what he had a right to do under his contract, and what any reasonably prudent man would have done for his protection.   As a party interested in getting his money back, he had a right to make the suggestions he made, without involving himself in the consequences of a partnership.   The expressions he made use of, "we" and "our," in speaking of the business, have been expressly ruled as not sufficient to create a partnership.   *Mollwo* v. *Court of Wards*, L. R. 4 P. C. 419; *Badelay* v. *Cons. Bank*, L. R. 38 Ch. D. 238 ; *Boston* v. *Smith*, 13 R. I. 27 ; *Cassidy* v. *Hall*, 97 N. Y. 159 ; *Foulon* v. *Badart*, 80 Md. 579 ; *Lindley on Partnership*, 2d Am. ed p. 16.

There is nothing, it is submitted, in reason or law, that would estop Benton from denying that there was a partnership *inter sese*.   If not, then there can be no claim that he

was a partner, as far as the plaintiff, Thillman, is concerned, because his only knowledge of Benton's alleged connection with the concern was derived from representations made by his alleged copartners. If he was not a partner, then, of course, the representations made by Gailey and Von Hafften to Thillman can't make him a partner. Thillman, himself, testifies that he "did not know Benton personally, and had never seen him until the day of the trial, and had no dealings directly or indirectly with him." He dealt with the concern on the supposition that Benton was a partner, but this supposition was entirely the result of representations made by Gailey and Von Hafften, and unless they had the right to make those representations, of course Benton cannot be held. Of this opinion was the learned judge below, who granted the prayer of the defendant that there was no evidence of partnership legally sufficient to go to the jury, and rejected the prayers of the plaintiff, all of which, with the exception of the second, were rejected for this reason alone. As to the second, there was not only no evidence to support it, but it was directly contradicted by all the evidence in the case. For the law bearing upon the case we refer, in addition to the leading English cases before cited, to the following authorities: *Kerr* v. *Potter*, 6 G. 404; *Crawford* v. *Austen*, 34 Md. 50; *Sangston* v. *Hack*, 52 Md. 192; *Reddington* v. *Lanahan*, 59 Md. 429; *Bull* v. *Schuberth*, 2 Md. 56; *Smith* v. *Knight*, 71 Ill. 150; *Williams* v. *Lauten*, 7 Iowa, 446; *Buzzard* v. *Bank*, 67 Tex. 84; *Lord* v. *Proctor*, 7 Phil. 630; *Meehan* v. *Valentine*, 145 U. S. 624.

ROBINSON, C. J., delivered the opinion of the Court.

The real question we have to decide in this case in whether the articles of agreement between Von Hafften and Gailey trading as the Sanitary Milk Company and the defendant made the latter a member of the firm, for if he was a partner, then he is liable for the trade obligations of the partnership. And before considering the terms of this agreement

it may be as well to state what according to well-settled principles is necessary to constitute a partnership. In doing so we shall not attempt to define what is a partnership, for it would be a difficult matter to formulate a definition to meet every case. In his very able treatise on Partnership, MR. JUSTICE LINDLEY gives fifteen definitions from textwriters and judges, and it is not too much to say that no two of them exactly agree. At one time it was held that a mere participation in the profits of a trade or business made one by operation of law a partner, and this, too, even though he never meant to assume that relation, and had never held himself out to the public as a partner. This rule was first announced in *Grace* v. *Smith*, 2 Wm. Black, 995, decided in 1775, in which De GREY, C. J., said that every one who shares the profits ought also to bear his share of the loss, and for the reason, that by taking part of the profits, he takes part of that fund on which the creditor relies for the payment of his debt. And this principle was fully approved and adopted in the well known case of *Waugh* v. *Carver*, 2 H. Black, 235, decided in 1793. These cases were properly decided on the facts, but the grounds on which the judgments are based, have never been considered as being satisfactory, for as was said in *Mollwo, March & Co.* v. *Court of Wards*, L. R. 4 P. C., 419, "the same consequences might follow in a far greater degree from the mortgage of the common property of the firm, which certainly would not of itself make the mortgagee a partner." Finally in the leading case of *Cox* v. *Hickman*, 8 House Lord Cases, 268, the LORD CHANCELLOR CAMPBELL, LORD BROUGHAM, LORD CRANWORTH and LORD WENSLEYDALE, all sitting, the question was fully considered and the rule laid down in *Grace* v. *Smith*, and *Waugh* v. *Carver*, was in a great measure qualified, if not entirely overruled. In delivering his judgment LORD CRANWORTH says: "It is often said that the test or one of the tests whether a person not ostensibly a partner is nevertheless in contemplation of law a partner, is whether he is entitled to participate in the profits. This

no doubt is in general a sufficiently accurate test, for a right to participate in profits affords cogent, often conclusive evidence that the trade in which the profits have been made was carried on in part for or in behalf of the person setting up such a claim. But the real ground of liability is that the trade in which the profits have been made was carried on by persons acting on his behalf. When that is the case he is liable to the trade obligations and entitled to its profits or to a share of them. It is not strictly correct to say that his right to share in the profits makes him liable to the debts of the trade. The correct mode of stating the proposition is to say that the same thing which entitles him to the one makes him liable to the other, namely, the fact that the trade has been carried on in his behalf, *i. e.*, that he stood in relation of principal towards the persons acting ostensibly as the traders by whom the liabilities have been incurred and under whose management the profits have been made."

In the subsequent case of *Mollwo, March & Co.*, in the Privy Council, SIR MONTAGUE SMITH says: "The judgment in *Cox* v. *Hickman* had certainly the effect of dissolving the rule of law which had been supposed to exist and laid down principles of decision by which the determination of cases of this kind is made to depend not on arbitrary presumptions of law, but on the real contracts and relations of the parties. It appears to be now established that although a right to participate in the profits of trade is a strong test of partnership, and that there may be cases where, from such perception alone, it may as a presumption not of law, but of fact, be inferred; yet that whether that relation does or does not exist must depend on the real intention and contract of the parties."

And in the still later case of *Badeley* v. *Consolidated Bank*, Law, Rep. 38 Ch. Div. 239, decided in 1888, COTTON L. J., after stating that the rule laid down in *Waugh* v. *Carner*, that the participation in the profits of a business does of itself by operation of law constitute a partnership eannot

now be considered the law, says, "I take it the law is this, that participation in profits is not now conclusive evidence of the existence of a partnership, but it is one of the circumstances and a very strong one which are to be taken into consideration for the purpose of seeing whether or not a partnership exists, that is to say, whether there was a joint business, or putting it in another way, whether the parties were carrying on the business as principals and as agents for each other—whether it is a joint business, or the business of one only."

We take it then to be well settled that a partnership is a contract of some kind involving mutual consent of the parties, and when such a contract is entered into between two or more persons for the purpose of carrying on a trade or business, with the right to participate in the profits of such trade or business, then such a contract constitutes a partnership unless there be other facts and circumstances which show that some other relation existed. And if there be a partnership in fact, then the public has the right to assume that every partner has authority from his copartner to bind the whole firm in contracts made according to the ordinary usages of trade. And this principle applies not only to persons acting openly and avowedly as partners; but also to others, who though not so acting are by a private agreement or arrangement partners with those who appear ostensibly to the world as persons carrying on the business. Without extending this opinion by special reference to the cases it is sufficient to say that the current decisions in this country are in full accord with the principles laid down in the English cases to which we have referred. The American cases are fully considered and reviewed by Mr. Bates in his carefully considered book on partnership. And before leaving this part of the case we deem it proper to say a word about *Rowland* v. *Long*, 45 Md. 439, referred to in the argument. The Court was dealing with that case as it was presented by the record, and there is nothing said in the decision when read in connection with the facts which con-

flicts in any manner with the rule laid down in *Cox* v. *Hick-man.* What we decided in *Rowland* v. *Long* was this, that where two or more persons agree to carry on a trade or business for their mutual benefit, one to furnish the money necessary to carry on the business and the other to per-form certain labor or render certain services, and each to share the profits from the business, these facts in themselves constituted a partnership, there being no other facts in that case to rebut the presumption arising from a participation in the profits of the trade or business, or to show that any other relation existed between the parties.

Tested by these principles, we come to the question whether the articles of agreement between Von Hafften and Gailey, trading as the Sanitary Milk Company, and·the defendant, made the latter a partner in the company. Now, what are the terms of this agreement? In the first place it is not an agreement *inter partes*, but an agreement between Von Hafften and Gailey, trading under the style of the Sanitary Milk Company, of the *first part*, and the defen-dant of the *second part.* And then it recites, that, whereas, the parties of the first part are securing additional capital for the purpose of carrying on the said business, the party of the second part is willing to contribute the amount so desired, namely, two thousand dollars,·upon the follow-ing terms and conditions. Then follows these terms and conditions, namely, Von Hafften is to be the general man-ager of the business, and for his services as such he is to be paid fifteen dollars per week. And then after the pay-ment of all expenses in conducting the business of the com-pany, "the parties of the first part" agree "to pay to the party of the second part for the use of the said two thou-sand dollars, an amount equal to one-third of the net profits arising out of the business." There is no reference what-ever as to a partnership. Von Hafften and Gailey, who had been engaged in the business of selling milk, needed addi-tional means to carry on the business. And the defendant Benton agrees to furnish them two thousand dollars, in

consideration of which he is not entitled to share in the profits, *qua* profits, but to be paid "for the use" of the money advanced by him "an amount," says the agreement, "equal to one-third of the net profits." And then it provides that this contract is to remain in force for one year from even date, and at the expiration of said year the said parties of the first part will pay unto the party of the second part, his two thousand dollars and his share of profits as stated. Thereby creating a personal liability on the part of Von Hafften and Gailey to pay to the defendant at the end of one year the entire amount advanced by him to them, and also to pay an amount equal to one-third of the net profits of the business for the year.

Now, it may be true that a participation in the profits of a business standing alone would, unless explained, lead to the conclusion that the business was carried on for the mutual benefit and by the joint authority of all the parties participating in such profits. But when the participation in profits arises from a particular clause in an agreement between the parties before you can justly say that such participation is *prima facie* evidence of a partnership, it will be necessary to look not only to that clause, but all other clauses in the contract, and then determine whether the contract taken as a whole justifies the conclusion that there is a partnership, that is, whether there is a joint business carried on in behalf of all the parties, or whether the transaction is one of loan between debtor and creditor, the loan or interest on the loan to be paid by an amount equal to a certain share in the profits. And looking to this agreement as a whole, it cannot, it seems to us, be considered as a contract of partnership, to be carried on jointly for the benefit of all the parties to the agreement; that is, a business in which all the parties are principals, with authority to bind each other by obligations entered into according to the ordinary usages of trade. On the contrary, by every fair rule of construction, it is an agreement by which the defendant was to loan to the company two thousand dollars

additional and to be paid for the use of the money "an amount equal to a certain proportion of the net profits."

It may not be amiss to add what was so well said in *Mollwo March and Co.* v. *Court of Wards*, "If cases should occur where any persons under the guise of such an arrangement, that is, the guise of an arrangement, as creditor and debtor, are really trading as principals and putting forward as ostensible traders, others who are really their agents, they must not hope by such devices to escape liability, for the law in cases of this kind will look at the body and substance of the arrangement, and fasten responsibility on the parties according to their true and real character." "It is a question," says SIR GEORGE JESSEL, "of substance and not of mere form." *Pooley* v. *Driver*, 5 Chan. Div., 458.

Outside of this agreement there is no evidence whatever to charge the defendant as partner. He did, it is true, now and then examine the books of the company, and gave his views as to the manner in which the business ought to be conducted, and in conversation with Von Hafften and Gailey, the members of the firm, spoke of the business as " our business," and when the company got into difficulties, he refused to advance any more money, preferring, as he said, to bear his share of the losses, rather than put more money in the concern. All these acts were consistent with his relation as a creditor of the company, for upon the successful management of the company depended the payment by it of the two thousand dollars loaned and the payment of part of the net profits for the use of the money. The defendant was a druggist living and doing business in another part of the town. There is not a particle of evidence to show that he ever held himself out to the public as a partner, or was in any sense an ostensible partner. And the Court committed no error in instructing the jury that there was no evidence legally sufficient to show that the defendant was a partner, and in refusing to grant the several prayers offered by the plaintiff.

The evidence offered in the first exception was beyond all

question inadmissible.    There was no evidence, as we have said, to show that the defendant ever held himself out as a partner, and in the absence of such evidence the question whether he was in fact a partner depended upon the written agreement between the parties.    The admissions and declarations of Von Hafften, one of the parties to the agreement, were not, therefore, admissible to prove that the defendant was a partner.

*Judgment affirmed.*

(Decided December 11th, 1895.)