## CHARLES H. PORTER et al. *vs.* MARY A. CONNOLLY et al.

*Distribution of Assets of Insolvent Partnership—Party Entititled to Share as Creditor of Firm.*

Articles of partnership between A. and B. stipulated that B. should procure a loan of five thousand dollars, to be used as the capital of the firm, by causing the promissory note of the firm for that amount to be discounted and renewed for use in the business; that the note should be a partnership indebtedness, to be retired and paid out of the profits of the business as rapidly as could be done without impairing the capital, and that no division of the profits should be made until payment of the note. The endorser of the firm's note, who obtained its discount, agreed to do so in consideration of A.'s entering into the partnership with B. A few years afterwards the firm became insolvent, and upon a distribution of its assets in the hands of the receivers, exceptions were filed to the claim of the endorser who had paid the firm's note. *Held,* that under the agreement, the note was not to be paid exclusively from the profits of the firm's business, but that it created the relation of debtor and creditor between the firm and the endorser, and that the endorser is now entitled to share as a creditor in the distribution of the assets.

*Decided January 14th, 1910.*

Appeals from the Circuit Court No. 2 of Baltimore City (SHARP, J.).

The cause was argued before BOYD, C. J., BRISCOE, PEARCE, SCHMUCKER, BURKE, THOMAS and URNER, JJ.

*James U. Dennis* and *T. Howard Embert* (with whom were *Alexander Yearley III* and *Samuel K. Dennis* on the brief), for the appellants.

*Isaac Lobe Straus,* for John J. Mahon, appellee.

BRISCOE, J., delivered the opinion of the Court.

There are three appeals, in this record, each from the Circuit Court No. 2 of Baltimore City, but as they are from the same decree and present the identical questions, they will be considered as one appeal.

The appellant on each appeal is a creditor or represents a claim against the insolvent estate of Mary A. Connolly and Mollie A. McRae, co-partners, trading as Connolly and Company, who prior to their insolvency conducted a millinery business in the City of Baltimore.

The appeal, it will be observed, is from an order or decree of the Circuit Court No. 2 of Baltimore City, passed on the 3rd day of July, 1909, overruling certain exceptions by the appellants and other creditors of the estate to the allowance of the claim of Mr. John J. Mahon, of Baltimore City, filed on the 9th of March, 1909, for $5,062.50, and decreeing that the claim is entitled to share and participate with the general creditors of the insolvent firm, in the distribution of the assets of the firm in the hands of receivers.

The facts which give rise to the controversy are as follows: On the first day of January, 1903, Mary A. Connolly and Mollie A. McRae, wife of George McRae, and a daughter of John J. Mahon, formed a co-partnership under the firm name and style of Connolly and Company, for the purpose of conducting a millinery business in the City of Baltimore, for the term of five years next thereafter, terminating on the thirty-first day of December, 1907.

By the fourth clause of the articles of partnership it was stipulated: The party of the first part agrees to give her entire time, business experience and knowledge to the business of said partnership, and the party of the second part agrees to

procure a loan of the sum of five thousand dollars, to be used as the capital of said co-partnership, by causing and procuring the promissory note of said co-partnership for the sum of five thousand dollars to be discounted, and the same to be renewed from time to time during the continuation of the said co-partnership as its business needs may require; the said promissory note and its renewals to be a partnership indebtedness and liability and to be retired and paid off out of the profits of the partnership business as rapidly as it may be able to do so, without impairing its capital and business resources. That no division of partnership profits shall be made between the partners (except the weekly salaries hereinafter mentioned), until the said promissory note above mentioned and all renewals thereof shall have been fully paid and satisfied, and then only by the assent of both partners and when such profits shall not be deemed necessary to the advancement of the partnership business. The indorsers of the promissory note hereinbefore recited shall assent hereto and agree to grant their indorsements of all renewals of the said promissory note that the partnership business may require.

By the fifth clause, it was further provided: It is agreed that in consideration of her business experience said Mary A. Connolly shall receive from the partnership assets a salary of fifteen dollars per week, and the said Mollie A. McRae shall receive a salary of ten dollars per week, the same to be payable weekly, and which said salaries shall be charged to expense account as part of the cost of conducting the business of said co-partnership. That profits shall be divided equally between the said partners and be payable and distributable as hereinbefore provided.

The articles of partnership were executed, signed and sealed by Mrs. McRae and Miss Connolly, and below their signatures on the agreement of partnership appears the following:

"In consideration of Mary A. Connolly entering into the above co-partnership with Mollie A. McRae, the undersigned,

being the husband and father of said Mollie A. McRae, hereby agree to endorse and procure the discounting of the note of said co-partnership for the sum of five thousand dollars, and to renew and procure the renewal of the discount of said promissory note as in the aforegoing agreement mentioned.

"Witness their hands and seals this          day of January, in the year one thousand nine · hundred and three. .

GEORGE McRAE,          (Seal)

JOHN J. MAHON.          (Seal)"

The business continued until March 16th, 1908, when the firm became embarrassed, ånd receivers were appointed to take charge of its assets.

Subsequently, on March 5th, 1909, an auditor's account was filed by the receivers, showing cash assets of $3,231.51, in hand, for distribution, and claims amounting to $4,593.16, were filed, against the estate. There was a dividend to creditors declared of about forty-four per cent. on the claims filed and proved.

On the 8th of March, 1909, and before the auditor's account had been ratified, the claim of Mr. Mahon for $5,-062.50 was filed, with proper affidavit annexed, as follows:

"Connolly and Company,

To John J. Mahon, Dr.   .

For cash loaned and advanced, as follows:

Note of Connolly and Company for $5,000, discounted by the National Marine Bank, said sum having been borrowed and obtained by said Connolly and Company upon and by virtue of the endorsement of said John J. Mahon at the instance and request of said Connolly and Company, and upon failure of said Connolly and Company the said John J. Mahon, as endorser of said note, was compelled to pay the same......$5,000.00

Interest on above note for three months, at 5%..    62.50

$5,062.50."

Afterwards, on the 15th of March, 1909, exceptions were filed to the auditor's account by Mr. Mahon, upon the ground that he was a creditor of the insolvent estate, for money loaned and advanced to the firm, and that his claim had been precluded from participation in the property and assets of the firm. And by a petition filed on the same day, the Court was asked to pass an order directing the auditor to restate the account and to allow a *pro rata* part of his claim.

On the 18th of March, 1909, two of the receivers, Messrs. Dennis and Yearley III, answered the petition, contesting the validity of the Mahon claim, and objecting to the restating of the account. Exceptions were also filed to the allowance of the claim by the two receivers, and by twelve of the general creditors having claims against the estate.

The case was heard upon the petition, exceptions, proof and agreement of counsel, filed on the 2nd day of July, 1909, and from a decree of Court, passed on the 3rd of July, 1909, overruling the exceptions to the Mahon claim and directing it to participate in the distribution of the assets of the firm, these appeals have been taken.

The questions involved on the appeals, turn upon the proper construction to be given the fourth clause of the agreement of co-partnership between Miss Connolly and Mrs. McRae, in connection with the addenda, over the signature of George McRae and John J. Mahon, to the effect, that in consideration of Mary A. Connolly, entering into the above co-partnership with Mollie A. McRae the undersigned, being the husband and father of Mollie A. McRae, hereby agree to endorse and procure the discounting of the note of said co-partnership for the sum of five thousand dollars and to renew and procure the renewal of the discount of said promissory note, as in the aforegoing agreement mentioned.

The substantial facts, upon which Mr. Mahon's claim rest, are in part set out in "the Agreement of Counsel" filed in the case, and are as follows: "That the claim of John J. Mahon for the sum of five thousand dollars ($5,000) principal, and $62.50 interest, heretofore filed in this case, is for the sum of

five thousand dollars, with interest, paid to the National
Marine Bank by John J. Mahon as an endorser upon a prom-
issory note made by George P. McRae, and as endorser upon
several successive renewals of the note, which note and which
renewals, respectively, were discounted at the National Ma-
rine Bank, the note and the renewals having been given and
having been endorsed by John J. Mahon under and in ac-
cordance with the agreement of partnership between Mary A.
Connolly and Mollie A. McRae, executed in January, 1903,
for the formation of the firm of Connolly and Company, and
to carry out the purpose of obtaining a loan of five thousand
dollars ($5,000) for the partnership of Connolly and Com-
pany, as provided in the agreement; the five thousand dollars
($5,000), with interest, having been actually paid by John
J. Mahon to the National Marine Bank as the endorser afore-
said upon the promissory note and the renewals respectively
thereof, and the proceeds of the note having been turned
over to and used by the firm of Connolly and Company, as
contemplated and provided for in the agreement; and, fur-
ther, that no part of the five thousand dollars ($5,000), or
proceeds of the note or the interest thereon has ever been
paid by the firm or by anyone, for or on its behalf, to John
J. Mahon, and that he has received nothing whatever on ac-
count thereof from any source whatever, but it is expressly
reserved that this agreement does not in any way admit that
the claim is a proper claim under the facts of this case to be
allowed as a claim against the partners of the firm of Con-
nolly and Company or against the firm, nor that the claim
has any right to be allowed a dividend out of the assets of
the firm of Connolly and Company in the hands of the re-
ceivers."

It appears also from the testimony of Mr. Mahon, that
the $5,000 was procured as a loan in accordance with the
terms of the agreement of partnership, and it also appears
from the evidence that the money was obtained by the firm
and entered on their books as a charge to capital on January
19th, 1903. The original note was discounted for the busi-

ness, of the Connolly firm, and the subsequent renewals for the benefit of that firm.

It appears to us, upon a careful reading and consideration of the language of the contract of partnership between the parties, and upon the testimony in the case, that the agreement was one for the loan of money, and created the relation of debtor and creditor between Mr. Mahon and the firm of Connolly and Company, and that Mr. Mahon's claim, was properly allowed by the Court below to participate in the distribution.

The most cursory reading of the contract shows, that it cannot be considered as a contract of partnership between Mrs. McRae, Miss Connolly and Mr. Mahon. The language of the contract itself would forbid any such construction.

The parties to the contract were Miss Connolly and Mrs. McRae, and the latter, as the party of the second part, according to the express terms and wording of the agreement was "to procure a loan of the sum of five thousand dollars to be used as the capital of the co-partnership, by causing and procuring the promissory note" of the firm for this sum to be discounted, and to be renewed during the continuance of the partnership as its business needs may require, and the promissory note and its renewals to be a partnership indebtedness and liability and to be retired and paid off out of the profits of the partnership business as rapidly as it may be able to do so, without impairing its capital and business resources. There is nothing in the evidence to show that Mr. Mahon held himself out, or permitted himself to be held out as a partner, whereby the public was misled or extended credit to the firm, or that he was in any sense an ostensible partner. On the contrary, as was said by this Court in *Thillman* v. *Benton,* 82 Md. 75, by every fair rule of construction, it was an agreement by which the defendant was to loan to the company, * * * and to be paid for the loan, a partnership indebtedness and liability, out of the profits of the partnership business, as rapidly as it may be able to do so.

This construction of the contract, here in dispute, we think, is supported by the real intention and contract of the parties and by the decisions of this Court and the American authorities. *Fletcher v. Pullen,* 70 Md. 205; *Lighthiser v. Allison,* 100 Md. 103; *Thillman v. Benton,* 82 Md. 64; *Mollo, March & Co. v. Court of.Wards,* L. R., 4 Privy Council Appeals; 49; *Boston, etc., v. Smith et al.,* 13 R. I. 27; *Newlin, Admr., v. Bailey et al.,* 15 Bradwell (Ill.) 199; *Polk v. Buchanan,* 5 Sneed (Tenn.) 722.

But the appellants contend that by a proper construction of the agreement Mr. Mahon was to be protected in his endorsement of the note, only by the profits of the business. There would be no difficulty whatever as to this position if the contract was susceptible of the construction here urged by the appellants and that the profits exclusively were to be the sole and only repayment of the loan, and if there were no profits, there would be no claim on the note. We entirely concur with the reasoning of the Court below, upon this branch of the case, wherein it is stated: "The agreement will not bear that construction. The language of the agreement is "the party of the second part" (Mrs. McRae) "agrees to procure a loan of the sum of $5,000, to be used as the capital of said partnership by causing and procuring the promissory note of said partnership for the sum of $5,000 to be discounted." * * * "The said promissory note and its renewals to be a partnership indebtedness and liability. It is apparent that this loan was to be repaid by the firm."

The clause stipulating "note to be paid off out of the profits" was evidently inserted to prevent any withdrawal of the profits by the partners, except the weekly salaries, until the note was paid. It would be very unfair and forced construction of the agreement to construe it to mean that the note was to be paid out of the profits or not at all. Suppose one of the partners had died, or the firm had been dissolved for any reason, and there had been no profits, it certainly could not be held there was no obligation to pay the note.

The agreement refers to the $5,000 as "a loan." It was to be "a partnership indebtedness and liability."

The position of the claimant under this agreement was that of endorser on a note; he was not a partner. The holder of a note could, at its maturity, have refused to renew it and sued the firm and the endorsers. An endorser who was compelled to pay the note has a claim against the makers."

There were other objections presented in argument and discussed in the appellants' brief, to defeat the Mahon claim, but as these exceptions do not appear to be sustained by the evidence or in harmony with the construction we have placed upon the contract in this case, we do not deem it necessary to consider them.

For the reasons given, the decree of the Circuit Court No. 2 of Baltimore City dated the 3rd of July, 1909, will be affirmed, the costs to be paid by the receivers out of the estate.

> *Decree affirmed, the costs to be paid by the receivers out of the estate.*