CHARLES S. MARTIN, Appellant, v. WILLIAM C. PEYTON et al., Respondents, Impleaded with Others.

**Partnership — contract — rule to determine whether partnership exists — loan of securities to banking firm to be used as collateral — agreement for control of business of firm by trustees representing lenders — provisions insufficient to show creation of a partnership.**

1. A contract which as a whole contemplates an association of two or more persons to carry on as co-owners a business for profit is a partnership. If it be less than this no partnership exists. Passing on the contract as a whole, an arrangement for sharing profits is to be considered and given its due weight in connection with all the rest. It is not decisive. It may be merely the method adopted to pay a debt or wages, as interest on a loan or for other reasons.

2. In an action to hold the respondents as partners in a firm doing business as bankers and brokers, where it appears that the firm being financially involved it entered into an agreement with respondents, expressed in three documents executed as part of one transaction, by the terms of which respondents were to loan the firm securities to be used by it as collateral and the business of the firm was to be controlled by trustees representing the lenders who were to share in the profits until return of the securities, upon examination of the papers, taken as a whole, it cannot be held that a partnership exists.

*Martin* v. *Peyton*, 219 App. Div. 297, affirmed.

(Argued June 6, 1927; decided July 20, 1927 )

APPEAL, by permission, from a judgment of the Appellate Division of the Supreme Court in the first judicial

department, entered February 16, 1927, unanimously affirming a judgment in favor of defendant entered upon the report of a referee.

*Charles P. Howland, Walter H. Pollak* and *John D. Van Cott* for appellant.   The relation that the Peyton-Perkins groups bore to the firm of Knauth, Nachod & Kuhne by virtue of the agreements of June 4, 1921, was the typical partnership relation, a relation alike of proprietorship and principalship.   (*Dry Dock Bank* v. *American Life Ins. & Trust Co.*, 3 N. Y. 344; *Wyckoff, Church & Partridge* v. *Riverside Bank*, 135 App. Div. 400; 204 N. Y. 561; *Maryland Casualty Co.* v. *Omaha Electric Light & Power Co.*, 157 Fed. Rep. 514; *Magovern* v. *Robertson*, 116 N. Y. 61; *Johnson Bros.* v. *Carter*, 120 Iowa, 355; *Minter* v. *Gidinsky*, 228 S. W. Rep. 1075; *Meehan* v. *Valentine*, 145 U. S. 611; *Bailey Co.* v. *Darling*, 119 Me. 326; *Gray* v. *Rosendorf*, 181 App. Div. 824; *Kent* v. *Universal Film*, 200 App. Div. 539; *Bershad* v. *Roshke*, 196 N. Y. Supp. 548; *Pierce* v. *Feno*, 184 N. Y. Supp. 851.)   One who has the powers of a partner is as matter of law a partner and liable as such.   The contract of June fourth gave to the Peyton-Perkins groups these characteristic rights and powers of partners.   (Lindley on Partnership, 51, 52; *Ex parte Delhasse*, 7 Ch. Div. 511; *Magovern* ·v. *Robertson*, 116 N. Y. 61; *Pooley* v. *Driver*, 5 Ch. Div. 458; *Evans* v. *Warner*, 20 App. Div. 230; *Matter of Van Buren* v. *Estate of Decker*, 204 App. Div. 138; *Cossack* v. *Burgwyn*, 112 N. C. 304.)   The option contract of June fourth gave to the Peyton-Perkins groups the power of liquidation and the *delectus personarum.* The contract and option contract together gave the Peyton-Perkins interests all the powers possessed by the members of a typical partnership.   (*Greenham* v. *Gray*, 4 Ir. C. L. 501; *Burnett* v. *Snyder*, 76 N. Y. 344; *Badeley* v. *Consolidated Bank*, 38 Ch. Div. 238; *Mollwo, March & Co.* v. *Court of Wards*, L. R. 4 P. C. App. 419.)   The

disclaimers of partnership liability inserted in the contract of June fourth serve only to show the fear of partnership that counsel for the Peyton-Perkins interests entertained. They cannot affect any relation which the positive provisions establish. (*Manhattan Brass & Mfg. Co.* v. *Sears,* 45 N. Y. 797; *Pierce* v. *Feno,* 184 N. Y. Supp. 851; *Evans* v. *Warner,* 20 App. Div. 230; *Russell* v. *Herrick,* 127 App. Div. 503; 195 N. Y. 586; *Hawkins* v. *Campbell,* 48 App. Div. 43; *Meehan* v. *Valentine,* 145 U. S. 611; *Daon* v. *Dyer,* 286 Fed. Rep. 339; *Fougner* v. *First Nat. Bank of Chicago,* 141 Ill. 124.)

*Maxwell C. Katz* and *Otto C. Sommerich* for Rheinische Creditbank et al., *amici curiæ.* Under the agreements, respondents were persons carrying on, with the former members of the firm of Knauth, Nachod & Kuhne, its business as co-owners thereof. (*Camp* v. *Rogers,* 44 Conn. 298; *Higgins* v. *City of San Diego,* 131 Cal. 294; *Dow* v. *Mining Co.,* 31 Cal. 629; *First National Bank* v. *Staples,* 11 N. Y. Supp. 809; 126 N. Y. 669; *Evans* v. *Warner,* 20 App. Div. 230; *Johnson* v. *Alexander,* 46 App. Div. 6; 167 N. Y. 605; *Lefevre* v. *Silo,* 112 App. Div. 464; *Russell* v. *Herrick,* 195 N. Y. 586.)

*Leonard B. Smith* and *George W. Elkins* for William C. Peyton et al., respondents. None of the provisions of the agreements of June 4, 1921, indicate the existence of a partnership; all are consistent with the relation of debtor and creditor, bailor and bailee, and principal and surety. (*Badeley* v. *Consolidated Bank,* L. R. 38 Ch. Div. 238; *Burnett* v. *Snyder,* 81 N. Y. 550; *Fechteler* v. *Palm Bros. & Co.,* 133 Fed. Rep. 462; *Rockafellow* v. *Miller,* 107 N. Y. 507; *Crehan* v. *Megargel,* 199 App. Div. 649; 234 N. Y. 67; *Austin, Nichols & Co.* v. *Neil,* 62 N. J. L. 462; *Thillman* v. *Benton,* 82 Md. 64; *Matter of Hoyne,* 277 Fed. Rep. 669; 258 U. S. 623; *Mollwo, March & Co.* v. *Court of Wards,* L. R. 4 P. C. App. 419; *Boston Co.*

v. *Smith,* 13 R. I. 27; *Dake* v. *Butler,* 7 Misc. Rep. 302; 80 Hun, 602; *Matter of Young — Ex parte Jones,* [1896] 2 Q. B. 484; *Hollom* v. *Whichelow,* 64 L. J. Q. B. 170; *King & Co.* v. *Whichelow,* 64 L. J. Q. B. 801.)    Provisions of the agreements of June 4, 1921, are inconsistent with the idea of partnership.    (*Mollwo, March & Co.* v. *Court of Wards,* L. R. 4 P. C. App. 419; *Burnett* v. *Snyder,* 81 N. Y. 550; *Salter* v. *Ham,* 31 N. Y. 321; *Heye* v. *Tilford,* 2 App. Div. 346; 154 N. Y. 757; *Central City Savings Bank* v. *Walker,* 66 N. Y. 424; *Kent* v. *Universal Film Mfg. Co.,* 200 App. Div. 539; *Jones* v. *Gould,* 209 N. Y. 419; *Gill* v. *Kuhn,* 6 Serg. & Rawle, 333; *Cox* v. *Hickman,* 8 H. L. Cas. 268; *Schultz* v. *Brackett Bridge Co.,* 35 Misc. Rep. 595; *Hutchinson* v. *Birdsong,* 211 App. Div. 316; *Canton Bridge Co.* v. *Eaton Rapids,* 107 Mich. 613; *Giles* v. *Vette,* 263 U. S. 553.)

*Lewis L. Delafield* and *Alfred Gregory* for Evelina B. Perkins et al., respondents.    The provision for a share of the profits was consistent with the loan of securities. (*King & Co.* v. *Whichelow,* 64 L. J. Q. B. 191; *Bullen* v. *Sharp,* L. R. 1 C. Pl. 86; *Ex parte Tennant,* 6 Ch. Div. 303; *Boston, etc., Smelting Co.* v. *Smith,* 13 R. I. 27; *Badeley* v. *Consolidated Bank,* L. R. 38 Ch. Div. 238; *Davis* v. *Davis,* 1 Ch. Div. 393; *Thillman* v. *Benton,* 82 Md. 64.)    The provision that, until the return of the active securities, the directing management should be in the hands of Hall, one of the partners of K. N. & K., was consistent with the loan of securities.    (*Thillman* v. *Benton,* 82 Md. 64.)    The provisions of the contract that the firm should enter into no speculative transactions without the consent of the trustees; that the trustees should be advised about the business of the firm and consulted in all important matters affecting its interest, and that the trustees might veto any business which was highly speculative or injurious to the interest of the

lenders, were all consistent with the loan of the active securities. (*Badeley* v. *Consolidated Bank*, 38 Ch. Div. 238; *Mollwo, March & Co.* v. *Court of Wards*, L. R. 4 P. C. App. 419; *King & Co.* v. *Whichelow*, 64 L. J. Q. B. 801.) The option given the lenders is consistent with the loan of securities and is inconsistent with a partnership. (*Matter of Young — Ex parte Jones*, 2 Q. B. Div. 484; *Matter of Beard & Co.*, 1 Hansell's Bankr. Cas. 191.) Under the contract of June 4, 1921, the active securities were loaned and under the contract of November 20, 1922, the money was loaned. The obligation of K. N. & K. to return the securities in the one case and the money in the other was absolute and unconditional; in neither case did the lenders contribute capital to K. N. & K. All the rights and powers given to the lenders were for the protection of their interests as creditors. (*Pooley* v. *Driver*, L. R. 5 Ch. Div. 458; *King & Co.* v. *Whichelow*, 64 L. J. Q. B. 801.)

ANDREWS, J. Much ancient learning as to partnership is obsolete. Today only those who are partners between themselves may be charged for partnership debts by others. (Partnership Law [Cons. Laws, ch. 39], sec. 11.) There is one exception. Now and then a recovery is allowed where in truth such relationship is absent. This is because the debtor may not deny the claim. (Sec. 27.) Partnership results from contract, express or implied. If denied it may be proved by the production of some written instrument; by testimony as to some conversation; by circumstantial evidence. If nothing else appears the receipt by the defendant of a share of the profits of the business is enough. (Sec. 11.)

Assuming some written contract between the parties the question may arise whether it creates a partnership. If it be complete; if it expresses in good faith the full understanding and obligation of the parties, then it is for the court to say whether a partnership exists. It

may, however, be a mere sham intended to hide the real relationship. Then other results follow. In passing upon it effect is to be given to each provision. Mere words will not blind us to realities. Statements that no partnership is intended are not conclusive. If as a whole a contract contemplates an association of two or more persons to carry on as co-owners a business for profit a partnership there is. (Sec. 10.) On the other hand, if it be less than this no partnership exists. Passing on the contract as a whole, an arrangement for sharing profits is to be considered. It is to be given its due weight. But it is to be weighed in connection with all the rest. It is not decisive. It may be merely the method adopted to pay a debt or wages, as interest on a loan or for other reasons.

An existing contract may be modified later by subsequent agreement, oral or written. A partnership may be so created where there was none before. And again, that the original agreement has been so modified may be proved by circumstantial evidence — by showing the conduct of the parties.

In the case before us the claim that the defendants became partners in the firm of Knauth, Nachod & Kuhne, doing business as bankers and brokers, depends upon the interpretation of certain instruments. There is nothing in their subsequent acts determinative of or indeed material upon this question. And we are relieved of questions that sometimes arise. " The plaintiff's position is not," we are told, " that the agreements of June 4, 1921, were a false expression or incomplete expression of the intention of the parties. We say that they express defendants' intention and that that intention was to create a relationship which as a matter of law constitutes a partnership." Nor may the claim of the plaintiff be rested on any question of estoppel. " The plaintiff's claim," he stipulates, " is a claim of actual

partnership, not of partnership by estoppel, and liability is not sought to be predicated upon article 27 of the New York Partnership Law.''

Remitted then, as we are, to the documents themselves, we refer to circumstances surrounding their execution only so far as is necessary to make them intelligible. And we are to remember that although the intention of the parties to avoid liability as partners is clear, although in language precise and definite they deny any design to then join the firm of K. N. & K.; although they say their interests in profits should be construed merely as a measure of compensation for loans, not an interest in profits as such; although they provide that they shall not be liable for any losses or treated as partners, the question still remains whether in fact they agree to so associate themselves with the firm as to '' carry on as co-owners a business for profit.''

In the spring of 1921 the firm of K. N. & K. found itself in financial difficulties. John R. Hall was one of the partners. He was a friend of Mr. Peyton. From him he obtained the loan of almost $500,000 of Liberty bonds, which K. N. & K. might use as collateral to secure bank advances. This, however, was not sufficient. The firm and its members had engaged in unwise speculations, and it was deeply involved. Mr. Hall was also intimately acquainted with George W. Perkins, Jr., and with Edward W. Freeman. He also knew Mrs. Peyton and Mrs. Perkins and Mrs. Freeman. All were anxious to help him. He, therefore, representing K. N. & K., entered into negotiations with them. While they were pending a proposition was made that Mr. Peyton, Mr. Perkins and Mr. Freeman or some of them should become partners. It met a decided refusal. Finally an agreement was reached. It is expressed in three documents, executed on the same day, all a part of the one transaction. They were drawn with care and are unambiguous. We

shall refer to them as " the agreement," " the indenture " and " the option."

We have no doubt as to their general purpose. The respondents were to loan K. N. & K. $2,500,000 worth of liquid securities, which were to be returned to them on or before April 15, 1923. The firm might hypothecate them to secure loans totalling $2,000,000, using the proceeds as its business necessities required. To insure respondents against loss K. N. & K. were to turn over to them a large number of their own securities which may have been valuable, but which were of so speculative a nature that they could not be used as collateral for bank loans. In compensation for the loan the respondents were to receive 40 per cent of the profits of the firm until the return was made, not exceeding, however, $500,000 and not less than $100,000. Merely because the transaction involved the transfer of securities and not of cash does not prevent its being a loan within the meaning of section 11. The respondents also were given an option to join the firm if they or any of them expressed a desire to do so before June 4, 1923.

Many other detailed agreements are contained in the papers. Are they such as may be properly inserted to protect the lenders? Or do they go further? Whatever their purpose, did they in truth associate the respondents with the firm so that they and it together thereafter carried on as co-owners a business for profit? The answer depends upon an analysis of these various provisions.

As representing the lenders, Mr. Peyton and Mr. Freeman are called " trustees." The loaned securities when used as collateral are not to be mingled with other securities of K. N. & K., and the trustees at all times are to be kept informed of all transactions affecting them. To them shall be paid all dividends and income accruing therefrom. They may also substitute for any of the

securities loaned securities of equal value. With their consent the firm may sell any of its securities held by the respondents, the proceeds to go, however, to the trustees. In other similar ways the trustees may deal with these same securities, but the securities loaned shall always be sufficient in value to permit of their hypothecation for $2,000,000. If they rise in price the excess may be withdrawn by the defendants. If they fall they shall make good the deficiency.

So far there is no hint that the transaction is not a loan of securities with a provision for compensation. Later a somewhat closer connection with the firm appears. Until the securities are returned the directing management of the firm is to be in the hands of John R. Hall, and his life is to be insured for $1,000,000, and the policies are to be assigned as further collateral security to the trustees. These requirements are not unnatural. Hall was the one known and trusted by the defendants. Their acquaintance with the other members of the firm was of the slightest. These others had brought an old and established business to the verge of bankruptcy. As the respondents knew, they also had engaged in unsafe speculation. The respondents were about to loan $2,500,000 of good securities. As collateral they were to receive others of problematical value. What they required seems but ordinary caution. Nor does it imply an association in the business.

The trustees are to be kept advised as to the conduct of the business and consulted as to important matters. They may inspect the firm books and are entitled to any information they think important. Finally they may veto any business they think highly speculative or injurious. Again we hold this but a proper precaution to safeguard the loan. The trustees may not initiate any transaction as a partner may do. They may not bind the firm by any action of their own. Under the circumstances the safety of the loan depended upon the

business success of K. N. & K. This success was likely to be compromised by the inclination of its members to engage in speculation. No longer, if the respondents were to be protected, should it be allowed. The trustees, therefore, might prohibit it, and that their prohibition might be effective, information was to be furnished them. Not dissimilar agreements have been held proper to guard the interests of the lender.

As further security each member of K. N. & K. is to assign to the trustees their interest in the firm. No loan by the firm to any member is permitted and the amount each may draw is fixed. No other distribution of profits is to be made. So that realized profits may be calculated the existing capital is stated to be $700,000, and profits are to be realized as promptly as good business practice will permit. In case the trustees think this is not done, the question is left to them and to Mr. Hall, and if they differ then to an arbitrator. There is no obligation that the firm shall continue the business. It may dissolve at any time. Again we conclude there is nothing here not properly adapted to secure the interest of the respondents as lenders. If their compensation is dependent on a percentage of the profits still provision must be made to define what these profits shall be.

The " indenture " is substantially a mortgage of the collateral delivered by K. N. & K. to the trustees to secure the performance of the " agreement." It certainly does not strengthen the claim that the respondents were partners.

Finally we have the " option." It permits the respondents or any of them or their assignees or nominees to enter the firm at a later date if they desire to do so by buying 50 per cent or less of the interests therein of all or any of the members at a stated price. Or a corporation may, if the respondents and the members agree, be formed in place of the firm. Meanwhile, apparently with the design of protecting the firm business against improper

or ill-judged action which might render the option value-
less, each member of the firm is to place his resignation in
the hands of Mr. Hall. If at any time he and the trustees
agree that such resignation should be accepted, that
member shall then retire, receiving the value of his interest
calculated as of the date of such retirement.

This last provision is somewhat unusual, yet it is not
enough in itself to show that on June 4, 1921, a present
partnership was created nor taking these various papers
as a whole do we reach such a result. It is quite true
that even if one or two or three like provisions contained
in such a contract do not require this conclusion, yet it
is also true that when taken together a point may come
where stipulations immaterial separately cover so wide a
field that we should hold a partnership exists. As in
other branches of the law a question of degree is often
the determining factor. Here that point has not been
reached. (*Cox* v. *Hickman*, [1860] 8 H. L. Cas. 267,
268; *Mollwo, March & Co.* v. *Court of Wards*, [1872] L. R.
4 P. C. App. 419; *Badeley* v. *The Bank*, [1888] L. R. 38
Ch. Div. 238; *Matter of Young*, [1896] 2 Q. B. 484; *King &
Co.* v. *Whichelow*, [1896] 64 L. J. Q. B. 801; *Giles* v. *Vette*,
263 U. S. 553; *Matter of Hoyne*, 277 Fed. Rep. 668, 669;
*Petition of Williams,* 297 Fed. Rep. 696; *Eastman* v.
*Clark*, 53 N. H. 276; *Thillman* v. *Benton*, 82 Md. 64;
*Boston & Colorado Smelting Co.* v. *Smith*, 13 R. I. 27;
*Austin, Nichols & Co.* v. *Neil*, 62 N. J. L. 462.)

The judgment appealed from should be affirmed, with
costs.

CARDOZO, Ch. J., POUND, CRANE, LEHMAN, KELLOGG
and O'BRIEN, JJ., concur.

Judgment affirmed, etc.