BROOK IRON WORKS, INC., Plaintiff, *v.* HENRY I. COHEN, Defendant.

Municipal Court of New York, Borough of Manhattan, First District, November 24, 1930.

*Murray, Hollaman & Lockwood* [*Preston Staley* of counsel], for the plaintiff.

*Kreutzer & Slack* [*Meyer H. Slack* of counsel], for the defendant.

EDER, J. The plaintiff sues upon two causes of action, the *first* based upon a written contract, and the *second* upon an oral one. This written contract, the subject of the first cause of action, results from a written proposal of the plaintiff to the defendant, dated April 5, 1929, which proposal he accepted by a letter dated April 15, 1929, and concerns the sale by the plaintiff to the defendant of 403 lineal feet of fence, described as " Habitant White Cedar Fencing," identified as design No. 1225, Lenox style, to be erected by plaintiff upon the premises of the defendant, for a price of $778. The second cause of action, founded on an oral contract, concerns the sale by the plaintiff to the defendant of two gates, described as " Double Drive Gates " and to be erected by plaintiff upon the same premises, for a price of $84.

The complaint does not allege the contracts to be either in writing or oral, but their character as a written or oral contract, respectively, first appears from the plaintiff's bill of particulars. The answer served to the complaint pleaded merely a general denial, but upon being informed by the bill of particulars of the character of the claims, the defendant thereupon served due and timely notice that upon the trial of this action a motion would be made to amend the answer to plead the Statute of Frauds as a separate defense to both causes of action. Upon the trial the motion was granted against the objection of the plaintiff and it is claimed the court erred. The amendment, I think, was properly

granted in the interests of justice. The defendant was in no way apprised by the allegations of the complaint as framed whether the contracts alleged were written or oral, and hence the defendant was in no position to know from the form of the complaint whether the Statute of Frauds could be pleaded as a defense.

When first apprised by the bill of particulars of the character of the contracts, he notified the plaintiff with due promptness of his intention to enter the special plea, and plaintiff cannot be heard to complain of the defendant's omission to enter it in the very first instance where it failed to furnish the defendant with the slightest information as to whether the contracts sued on were written or oral. Moreover, plaintiff did not plead inconvenience or surprise (*Feizi* v. *Second Russian Insurance Co.*, 199 App. Div. 775), and could hardly have done so in the face of the timely notice served by the defendant of his intention to move to amend. " At any stage of the cause the court must allow amendment of any * * * pleading * * * if substantial justice will be promoted thereby * * * " (Mun. Ct. Code, § 93, and in the circumstances, the interests of justice, I believe, warranted the allowance of the amendment. (Civ. Prac. Act, § 105; Rules Civ. Prac. rule 166; *Gottlieb* v. *Gins*, 102 Misc. 686.)

As to the merits of the controversy, proof thereof has come from the plaintiff alone; no testimony was offered by the defendant, who elected to stand upon the proof as made by the plaintiff.

The evidence of the plaintiff is that subsequent to the making of the contract of April fifteenth, hereinafter styled the written contract, for 403 lineal feet of white cedar fencing, it furnished to the defendant, at his request, a written estimate for 403 feet of what is termed " Chain-link " fencing, for a price of $421, this proposal being dated May 9, 1929; and it also contained a separate and distinct proposal to furnish and erect the two " Double Drive Gates," the basis of the second cause of action, to which reference has been made.

It appears, and such is the evidence of the plaintiff, without dispute by the defendant (except such as appears argumentatively in raising and discussing the questions of law upon which he relies to defeat plaintiff's recovery), that this estimate of May ninth followed some discussion relating to possible change from wood fencing, as called for by the written contract, to metal fencing, and that in the event this change occurred, the price would be $421. In the same writing mention is made of the " Double Drive Gates," but this reference, however, it is testified to by plaintiff, was independent of the fencing item and was a separate and distinct unit quotation, wholly unrelated to the terms of the written contract, though mentioned in the same paper.

Relative to this feature, plaintiff testified, without dispute, that after the making of the written contract, the defendant requested it to furnish him with an estimate for 403 feet of chain-link fencing for the *side* line of his property, explaining that he had decided to put the *wood* fencing along the *front* and also that he wanted double drive gates for the front to match the wood fencing. Plaintiff directed his attention to the fact that the front of his property was some 98 feet shorter than the side line and that as a consequence there would be a surplusage of wood fencing under the written contract. That with the prospect, however, of securing an order for an *additional* 403 feet of *chain-link* fencing, it consented to credit the defendant with such surplusage of wood fencing, and that the estimate of May ninth was thereupon delivered to the defendant. This sets forth the item of $421 for the proposed chain-link fencing and the item of $84 for the proposed double drive gates for the front, and a further statement that " It is understood that the *surplus* fencing $1,225, our Lenox style ordered under date of April 15, 1929, and which will not be required on front line of property, is to be returned to us and adjustment made on completion."

Upon the receipt of this estimate, the defendant requested plaintiff to submit a statement showing the total amount that would be due *if* he ordered the *chain-link* fencing and gates *in addition* to the wood fencing previously ordered. Plaintiff thereupon wrote defendant on May tenth, setting out the matter in detail and quoted the total amount of $1,101. After the receipt by the defendant of the estimate of May ninth, and the complementary letter of May tenth, he notified the plaintiff that he had decided not to order the chain-link fencing, but that he did want the wood gates to go with the wood fencing, both to be erected in front of his premises, the double drive gates to cost $84 as stated in the estimate of May ninth. This testimony of the plaintiff is without dispute.

The plaintiff, upon the defendant's written acceptance of the written proposal of April fifth, relative to the wood fencing, proceeded immediately and placed an order therefor with the Habitant Shops, Inc., of Bay City, Mich., manufacturers of fencing, and also placed with it an order for the manufacture of the wooden gates. This fencing, and these gates, constituted a special order as they were not of stock size, but were to be specially manufactured, for the stock size fencing was four feet in size, the regulation size; but defendant desired a five-foot fencing, and it was accordingly specially manufactured for him. The gates also were not stock gates, and in the form desired by the defendant had to be also specially manufactured for him. Such specially constructed fencing

and gates cannot be sold in the ordinary course of plaintiff's business and there is no market for them and they possess only a nominal value. This, too, is undisputed by the defendant. The undisputed testimony of the plaintiff is, also, that the fencing and gates were subsequently delivered to the defendant's property, but he refused to permit them to be left there, and also refused to permit plaintiff to erect them.

The defendant resists liability upon two grounds: 1. That the contracts sued on are void under the Statute of Frauds. 2. That no action for the price can be maintained. It is provided by section 85 of the Personal Property Law that "1. A contract to sell or a sale of any goods or choses in action of the value of fifty dollars or upwards shall not be enforceable by action unless the buyer shall accept part of the goods or choses in action so contracted to be sold or sold, and actually receive the same, or give something in earnest to bind the contract, or in part payment, or unless some note or memorandum in writing of the contract or sale be signed by the party to be charged or his agent in that behalf."

The defendant contends that when the plaintiff submitted the estimate of May ninth, it constituted an entirely new proposal and that when it was orally accepted by the defendant, it resulted in the original contract becoming abrogated and annulled and constituted an abandonment of it; that this written contract, constituting the first cause of action, was completely superseded by the subsequent oral contract (alleged as the second cause of action), and that this latter one, though relating the feature only of the double drive *gates* as embracing a distinctly new contractual element, must, nevertheless, be construed and interpreted as including and embracing as well the *fencing element.*

In support thereof attention is directed to the following as establishing the claim, *i. e.*, that the original contract was for 403 feet of wood fencing to be used on the side lines of the property; the subsequent estimate for 403 feet of chain-link fencing to be used on the side lines and 305 feet of wood fencing to be used on the front line, together with two gates in the front to match the wood fencing. This, asserts the defendant, is not a mere reduction in quantity, but is an entirely different contract. On the other hand, the plaintiff counters that the original agreement was never abrogated, annulled or abandoned, but was merely *modified* only to the extent that the number of lineal feet was to be reduced by ninety-eight feet, and the defendant allowed a credit for such reduction, *but that in all other respects* the contract was to remain in full force and effect.

Of course, if the estimate of May ninth and the complementary letter of May tenth be construed and interpreted as constituting an entirely new agreement between the parties, and the defendant's oral acceptance be held to have related to an acceptance of every feature in it, and not merely to the item of the two double drive gates, it would follow that the contract would be within the 1st subdivision of section 85, as it was for a sum in excess of fifty dollars, there was no acceptance or payment by defendant and there was no writing signed by him or his agent. However, there are various elements to be considered in arriving at the true state of things in this regard. For one thing, whether there was an abrogation, annullment or abandonment of the original contract referred to in the first cause of action, or merely a *modification* of it, is a question of intent. (*McCreery* v. *Day,* 119 N. Y. 1, 5; *Rodgers* v. *City of New York,* 222 App. Div. 564, 568.) If a modification of the original contract was only intended by allowing the defendant a reduction and credit for ninety-eight feet of fencing and the only new contractual element in the estimate related to the gates alone, as plaintiff has testified, without dispute, as contradistinguished from an abandonment, abrogation or annulment of it, the defendant's contention loses all its force. The defendant, anticipating and recognizing the potency of this premise, asserts the rule to be that where a modification of an executory contract of sale amounts to the making of a new contract, it is within the statute and that such a contract cannot be altered without a writing expressing a consideration for the alteration. (*Crocker* v. *Page,* 210 App. Div. 735; affd., 240 N. Y. 638.)

The correctness of this statement is not open to question. But the application of the rule must necessarily depend upon the particular facts of the particular case. " Those who make a contract may unmake it, or substitute another either wholly or partly inconsistent. The validity of the substituted contract must be determined, like that of any other, *in the light of the situation existing at the hour of its making.* If valid then, it will supersede or modify the first, to the extent that the two are unable to stand together." (*Lieberman* v. *Templar Motor Co.,* 236 N. Y. 139, 147.) " An existing contract may be modified later by subsequent agreement, oral or written. * * * And, again, that the original agreement has been so modified may be proved by circumstantial evidence — by showing the conduct of the parties." (*Martin* v. *Peyton,* 246 N. Y. 213, 218.) (See, also, *Archibald* v. *Panagoulopoulos,* 233 N. Y. 478, 486.) And " the rule that parol evidence will not be received for the purpose of varying or modifying a written contract applies only to conversations or transactions prior to the execution

of the written contract, and even a written contract may, after execution, be modified at the will of the parties by parol." (*Coff-Garrod Co.* v. *Norma Chocolate Co.*, 185 N. Y. Supp. 553, 554.)

The plaintiff testified, without dispute, that the estimate of May ninth, and the complementary letter of May tenth, were not intended to do anything more than inform the defendant of the cost of the chain-link fencing; that as to the original contract, they were only intended as a modification with respect to allowing and crediting the defendant with a reduction of ninety-eight feet of wood fencing; that it was a new proposal only as to the double drive gates. This claim of the plaintiff is amply supported by the reference in both the estimate and its complementary letter to the " adjustment " for the reduction of the ninety-eight feet of fencing, and the reference to the order number and style of fencing called for by the original contract. The modification related to the retention of the " surplus " fencing and the allowance of and credit to the defendant for the reduction, and nothing more. Nothing short of a plain perversion of language and the complete ignoring of the language of the writings and the undisputed proof of what they meant, can induce a contrary conclusion. If the estimate of May ninth, and the complementary letter of May tenth, were not intended as a new contract but were intended as and were merely a modification of the original contract, as testified to by the plaintiff, and with the exception of the reduction of the ninety-eight feet of fencing it remained in [full force and effect, which I find to be the fact, it disposes of the claim that as to the fencing the contract is within the statute.

The plaintiff has urged for consideration the point that even if the original contract was superseded by an oral one, the statute is inapplicable by reason of the exception contained in the last part of subdivision 2 of section 85, to the effect that " if the goods are to be manufactured by the *seller* especially for the buyer and are not suitable for sale to others in the ordinary course of the seller's business, the provisions of this section shall not apply." In discussing this feature, I find, upon the undisputed evidence, that the fencing and gates were manufactured specially for the defendant and that they are not suitable for sale and cannot be sold to others in the ordinary course of the plaintiff's business and possess only a nominal value. But I do not agree with the plaintiff that it comes within this exception because the testimony is that the plaintiff, as seller, did not manufacture the fencing or gates; the proof is that it was manufactured for and charged to the plaintiff by the Habitant Shops, Inc. It has been held by the First Appellate Term in *Eagle Paper Box Co.* v. *Gaitt-*

*McQuade Co.* (99 Misc. 508; affd., 181 App. Div. 924) that this exception does not apply to a case where the seller is not a manufacturer but has the goods manufactured by another for him. The phrase " manufactured by *the seller* " implies, I think, the process of original construction by the seller, and excludes the idea of original construction by another *for* the seller and the utilization or application of the original construction in another form. (*Michel* v. *American Cinema Corp.*, 182 N. Y. Supp. 588, 589.)

This view applies only with respect to the claim for the gates, which rests on an oral contract, for I have already found, as a fact, that as to the fencing it rests on a written contract. As to the gates, the contract being oral, in excess of the sum of fifty dollars, and there being no acceptance and receipt of them, and the defendant not having given anything in earnest to bind the contract, or in part payment, or any writing in respect thereof, plaintiff cannot recover as to this item.

I find upon the evidence, as the fact, and as a matter of law, that as to the written contract for the fencing there never was an abandonment, abrogation or annullment of it, but only a modification as hereinbefore mentioned, and that the plaintiff duly and fully performed the terms thereof and that the defendant deliberately breached the same and must respond in damages.

Defendant contends that the plaintiff cannot recover at all because it failed to make out a cause of action, since it pleaded and tried its case on the theory of an action for the price and not as one for damages; that an action for the price will not lie where the seller has still labor to perform or material to furnish to complete the contract, relying upon subdivision 4 of section 145 of the Personal Property Law (as added by Laws of 1911, chap. 571), providing that: " 4. If, while labor or expense of material amount are necessary on the part of the seller to enable him to fulfill his obligations under the contract to sell or the sale, the buyer repudiates the contract or the sale, or notifies the seller to proceed no further therewith, the buyer shall be liable to the seller for no greater damages than the seller would have suffered if he did nothing toward carrying out the contract or the sale after receiving notice of the buyer's repudiation or countermand. The profit the seller would have made if the contract or the sale had been fully performed shall be considered in estimating such damages." Defendant in his brief states that even if the action had been one for damages, plaintiff failed to prove damages; that the only testimony as to damages was the contract price and the cost of completion; that this is not the correct measure of damages; that under section 145, subdivision 4, the measure of damages

would be the cost of labor and materials up to the time of repudiation plus the profit the seller would have made. Yet at another stage of the brief defendant states that this feature of erroneously suing for the price would have been eliminated by a motion to amend the complaint to sue for damages instead of for the price or to conform the pleading to the proof. In other words, had paragraphs " 7 and 8 " been eliminated and had paragraph " 7 " of the complaint read " that by reason of the foregoing plaintiff has been damaged in the sum of $———," instead of reading as it does, " that the agreed price and reasonable value of said * * * is $———," the complaint would have been sufficient to entitle plaintiff to recover under such a pleading.

I see no insurmountable barrier here, and in the interests of justice the complaint may be amended accordingly to conform to the proof (Mun. Ct. Code, § 93), particularly where the proof went in without objection at the trial. The amendment for one thing does not change the nature or the form of the transaction; it still remains one on contract. The technical point that the words " has been damaged " should have been employed instead of " agreed price and reasonable value," goes to form and not to substance and does not prevent amendment to permit of recovery where the evidence warrants and justifies it. (*Sorenson* v. *Keesey Hosiery Co.*, 244 N. Y. 73, 79, 80.) " The law has outgrown its primitive stage of formalism when the precise word was the sovereign talisman and every slip was fatal. It takes a broader view to-day." (*Wood* v. *Duff-Gordon*, 222 N. Y. 88, 91.) It is not fatal to a recovery that a complaint does not allege that any damage has accrued to the plaintiff by reason of any breach of contract; it is not necessary to allege in terms that plaintiff has suffered damage; it is sufficient if facts are alleged from which damages may be inferred and may and do presumptively flow and there is a demand for judgment for a certain sum of money. (*Ketchum* v. *Van Dusen*, 11 App. Div. 332, 336; *Williams* v. *Conners*, 53 id. 599, 601; *Inman* v. *Smythe*, 133 Misc. 494, 496; *Winter* v. *American Aniline Products, Inc.*, 236 N. Y. 199.)

The court has power, and it is its duty in the interests of justice, to allow amendments. (Mun. Ct. Code, § 93.) Moreover, defendant does not claim in his brief that he has or will be prejudiced by the amendment; nor did he make any such claim at the trial. (Civ. Prac. Act, § 105; Rules Civ. Prac. rule 166, subd. 1.) (See *Feizi* v. *Second Russian Insurance Co., supra*.) Power now exists to allow amendment at the trial by insertion of even a new cause of action (*Feizi* v. *Second Russian Insurance Co., supra; Gottlieb* v. *Peck & Mack Co.*, 125 N. Y. Supp. 829, 831); heretofore this could not be done at the trial but only upon application to the Special

Term. (*Thileman* v. *Mayor of New York*, 71 App. Div. 595.) Under the Civil Practice Act this is no longer necessary and the trial court may grant such relief. (*Feizi* v. *Second Russian Insurance Co.*, *supra.*) Under the liberal provisions of section 93 of the Municipal Court Code in regard to amendments, an amendment may be allowed at any stage of the action prior to entry of judgment. (*Cianguilli* v. *City of New York*, 194 N. Y. Supp. 781, 782.)

However, while there can be no question as to the right of this court to permit, under the circumstances of this case, an amendment to the complaint, if substantial justice will be promoted thereby, and such amendment may be permitted even though it changes the entire cause of action (*Gottlieb* v. *Peck & Mack Co.*, *supra*), and though it may be allowed at any stage of the trial prior to judgment, " Nevertheless, such amendment must be made in open court, when the parties are present, so that proper action, by adjournment, *or otherwise*, may be taken to protect the rights of the party affected by such amendment." (*Gottlieb* v. *Peck & Mack Co.*, *supra.*) The plaintiff, in its brief, has requested leave to amend; decision has not yet been rendered, nor judgment awarded (*Cianguilli* v. *City of New York*, *supra*), and in the exercise of the court's discretion, and in the interest of justice, the trial will be reopened (*Barson* v. *Mulligan*, 77 App. Div. 192, 194), and the cause is set down for the 26th day of November, 1930, at nine A. M. to enable the plaintiff to make the motion, which will then be granted and defendant may then enter an exception to preserve his rights. The decision will then be rendered and judgment awarded, the same being at present withheld.

In concluding, it is proper to refer to the rule respecting the recoverable damage. In such a situation as this case presents, where the seller has manufactured or purchased goods sold and they have no sale or pecuniary value to the seller, no market value, as where they are specially manufactured or designed for the buyer, as here, the damage recoverable is the difference between the cost of performance and the contract price and also losses sustained comprising payments for labor and material, reasonably made in performance of the contract, to the extent that they are wasted by abandonment of performance. (*Lieberman* v. *Templar Motor Co.*, 236 N. Y. 139, 149; *Farrish Co.* v. *Harris Co.*, 122 Misc. 611.)

The sum of $778 is the contract price for 403 feet of fencing; this includes $61 figured as the cost of labor for the erection of the fencing; this, therefore, makes $717 as the price for the 403 feet of fencing, or $1.78 a foot. Plaintiff's recoverable damage for 305 feet of fencing would, therefore, appear to be $542.90.

The parties will appear at the day and hour designated above.