Joseph P. CONNORS, Sr.,
et al., Plaintiffs,

v.

MIDDLE FORK CORPORATION,
et al., Defendants.

Civ. A. No. 89–0698 (GHR).

United States District Court,
District of Columbia.

March 24, 1992.

---

ing and processing coal, and was a signatory employer to the National Bituminous Coal Wage Agreements of 1981 and 1984. Pursuant to these Wage Agreements, Middle Fork was obligated to and did make contributions to the Plans on behalf of its covered employees.

Plaintiffs in this action are the Trustees of the Plans. Defendants now before the Court are Arthur O. Rogers, II, individually, Arthur O. Rogers, II, trustee for Shannon Rogers, and James B. Rogers ("the Rogers defendants"). Plaintiffs have alleged that, as a result of its withdrawal from the Plans, Middle Fork and all trades or businesses under "common control" incurred withdrawal liability to the Plans under ERISA, 29 U.S.C. §§ 1301–1461. It is undisputed that, since January 1, 1984, Middle Fork has been wholly owned by MFC Partnership, a general partnership formed under Kentucky law, and thus a trade or business under common control with Middle Fork at the time the latter completely withdrew from the Plans.

Kathleen M. Dowd, Asst. Gen. Counsel, UMWA Health & Retirement Funds, David Titus Dekker Arent, Fox, Kintner, Plotkin & Kahn, Washington, D.C., for Joseph P. Connors.

Thomas P. Gies, Crowell & Moring, Washington, D.C., for defendants.

## MEMORANDUM AND OPINION

REVERCOMB, District Judge.

### I.

This is an ERISA[1] case involving an employer's liability for withdrawing from a multiemployer pension plan. It arises out of the withdrawal of Middle Fork Corporation ("Middle Fork"), in April 1987, from the United Mine Workers of America 1950 and 1974 Pension Plans ("the Plans"), which are multiemployer pension plans under ERISA, 29 U.S.C. §§ 1002(37), 1301(a)(3). Middle Fork is a Virginia corporation engaged in the business of produc-

On April 18, 1990, this Court entered a Default Judgment against Middle Fork, and John W. Lockhart and Caleb B. Cooley, two of the partners in the MFC Partnership. The Court determined that Middle Fork's withdrawal liability was $82,146.02 plus interest, liquidated damages, attorneys fees, and costs. Plaintiffs allege that none of these amounts have been paid, that Middle Fork is without assets to satisfy the judgment, that James Lockhart is likewise without assets, and that Caleb Cooley has filed for bankruptcy protection. *See* Pls.' Mot. for Summ.J. at 5–6.

Plaintiffs now seek to recover these amounts from the Rogers defendants on the grounds that the latter were general partners in MFC Partnership at the time withdrawal liability to the Plans was incurred and thus jointly and severally liable for the debts of the partnership. *See* Pls.' Mot. for Summ.J. at 6.[2] The Rogers defen-

---

1. The Employee Retirement Income Security Act of 1974, as amended by the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"), 29 U.S.C. § 1001, *et seq.*

2. The Plans also sought a Default Judgment against the Rogers defendants, which the Court entered on December 28, 1990. The Rogers

dants dispute the characterization of their legal relationship with MFC Partnership as one of full partnership. *See* Defs.' Mem. in Opp. to Pls.' Mot. for Summ.J. at 3–13. They contend instead that they were merely assignees of a partner's interest, entitled to no more than the assignor's profits from the firm. *See* Defs.' Mot. for Summ.J. at 6–14. They further contend that none of their actions subsequent to the alleged assignment gave rise to partnership status in MFC Partnership. *See id.* at 14–18.

The parties have now cross-moved for summary judgment. The Court initially heard oral argument on the motions on November 19, 1991. A subsequent hearing was held on January 30, 1992, pursuant to Fed.R.Civ.P. 43(e), at which the parties supplemented the record through oral testimony of witnesses and submission of additional exhibits. On the record now before the Court, and for the following reasons, the Court will deny plaintiffs', and grant defendants', motions for summary judgment.

## II.

The undisputed facts as they pertain to MFC Partnership are these. MFC Partnership was organized pursuant to a written partnership agreement dated April 8, 1983 ("the Partnership Agreement"). *See* Defs.' Ex. B. The partnership was formed to provide equipment to Middle Fork. *See* Lockhart Dep. at 19. It is undisputed that A. Odell Rogers ("Odell") entered into the MFC Partnership on April 8, 1983, with John Lockhart and Caleb Cooley. *See* Defs.' Ex. B; Aff. of A. Odell Rogers. From April 8, 1983 until July, 1984, Odell, Lockhart and Cooley were the only partners in MFC Partnership, although Cooley was also the trustee for four trusts that owned a partnership interest. *See* Defs.' Ex. B, at 361; Aff. of A. Odell Rogers. According to the Partnership Agreement, Odell held a 41% interest in the profits and losses of MFC Partnership. Defs.' Ex. B, at 361.

Odell Rogers is the father of the three Rogers defendants. The parties do not dis-

pute that, in July, 1984, he made a gift of his interest in MFC Partnership to his three sons. *See* Aff. of A. Odell Rogers ¶ 2. At the time of the transfer, defendants Arthur O. Rogers, II, and James B. Rogers were, respectively, 20 and 19 years of age, and were attending college outside of Virginia. Shannon Rogers was a four-year-old. *Id.* Odell testified that he informed his lawyer, Doug Wood, of his wish to transfer his interest in MFC Partnership to his sons, and left his lawyer to work out the details. When Arthur Rogers, II, received an Amended Partnership Agreement (the "Amended Agreement") from Mr. Wood with instructions on a post-it note to sign and return it, he instead placed the Amended Agreement in a filing cabinet without signing it. Aff. of Arthur O. Rogers, II ¶ 5. James Rogers did sign and return the Amended Agreement, but did so merely upon the instruction of the lawyer, without having read it. Aff. of James B. Rogers ¶ 5.

It is also undisputed that the Rogers defendants received income from MFC Partnership, which was reported to the Internal Revenue Service on the partnership's Schedule K–1 forms, and on the defendants' individual federal tax returns. The Schedule K–1s identify the Rogers defendants as general partners. *See, e.g.,* Pls.' Ex. 4 (federal income tax return of MFC Partnership for 1987). The defendants are also identified as "partners" on the partnership's unaudited balance sheet for December 31, 1985, and in one transaction reported on its General Ledger Activity for 1985. Finally, each of the Rogers defendants is reported as having received $1000 in "Management Fees" on Middle Fork's unaudited income statement for the year ending September 30, 1986.

## III.

█ The dispositive issue for the Court's determination is whether the Rogers defendants were general partners of MFC Partnership.[3] This issue is one of federal law,

---

defendants then petitioned to set aside the default, which the Court granted on May 14, 1991.

**3.** In their Memorandum of Points and Authorities in Opposition to Plaintiffs' Motion for Sum-

although the Court may also look to state law for guidance. *See Connors v. Ryan's Coal Co., Inc.*, 923 F.2d 1461, 1466 (11th Cir.1991); *Teamsters Pension Trust Fund v. H.F. Johnson*, 830 F.2d 1009, 1014 (9th Cir.1987). It is, of course, "well settled that the MPPAA contemplates recovery of withdrawal liability from partners and partnerships under common control with defaulting signatory employers." *Ryan's Coal*, 923 F.2d at 1466; *Connors v. Calvert Dev. Co.*, 622 F.Supp. 877, 880–881 (D.D.C.1985). There is, however, nothing to indicate that Title IV of ERISA abrogates general principles of partnership law in determining whether particular individuals are partners, and in making that determination courts have freely resorted to those principles. *See* 29 U.S.C. §§ 1381, 1405(c); *Ryan's Coal*, 923 F.2d at 1467–68; *H.F. Johnson*, 830 F.2d at 1014–15; *cf. Connors v. P & M Coal Co.*, 801 F.2d 1373, 1376–78 (D.C.Cir.1986) (holding that the definition of "employer" in Title I of ERISA should not be read into Title IV so as to compromise the principle of limited liability in corporate law).

■ In applying partnership law to the case at hand, plaintiff, as the proponent of liability, bears the burden of proof on the dispositive issue. Because the issue of defendants' partnership status is before the Court on the parties' motions for summary judgment, defendants will be entitled to summary judgment as a matter of law if plaintiffs fail to make a sufficient showing on an essential element of their case on which they have the burden of proof. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986) (further explaining that the summary judgment standard is similar to that of a directed verdict). Facts in dispute between the parties, moreover, must be material under the governing law—in this case, partnership law—before the Court may preclude the entry of summary judgment for either party. *See id.* at 248, 106 S.Ct. at 2510.

It is, of course, a fundamental principle of partnership law that "[a]bsent any limitation in the partnership agreement, partners are personally liable for obligations of the partnership." *H.F. Johnson*, 830 F.2d at 1015 (citing *Uniform Partnership Act § 17*); *see also* Ky.Rev.Stat.Ann. § 362.-220 (Baldwin 1991) (adopting § 17 of the Uniform Partnership Act). Whether one is a partner is usually said to be a question of intent. *See Ryan's Coal*, 923 F.2d at 1467; *Guthrie v. Foster*, 256 Ky. 753, 76 S.W.2d 927, 928–29 (Ct.App.1934): 1 Alan R. Bromberg & Larry E. Ribstein, *Bromberg & Ribstein on Partnership* § 2.05 (1988) [hereinafter "Bromberg & Ribstein"]; 68 C.J.S. *Partnership* § 24 (1950). The Court is satisfied that neither Odell Rogers nor the Rogers defendants ever intended the latter to be partners as a consequence of the July, 1984 transfer of Odell's interest in MFC Partnership. Odell's sworn affidavit and his oral testimony show that, in making this transfer, he merely intended to provide his sons with a source of income to defray their college expenses, and that he in no way intended that they be saddled with liability as partners. *See* Aff. of A. Odell Rogers ¶ 4. Similarly, both Arthur Rogers, II and James Rogers have stated in their sworn affidavits that they had no intention of becoming partners when presented with the Amended Agreement or when they received income from the firm. *See* Aff. of Arthur O. Rogers, II ¶¶ 5–6;

---

mary Judgment, the Rogers defendants also argue that plaintiffs are not entitled to collect withdrawal liability for the 1950 Plan because it is fully funded, that plaintiffs' attempts to collect withdrawal liability from them violates their fifth amendment due process rights, and that the case should be remanded to arbitration

in the event the Court finds the Rogers defendants to be employers under ERISA. Because the Court holds that the Rogers defendants were not general partners in MFC Partnership, and thus are not personally liable for the partnership's debts, it need not address these other issues.

Aff. of James B. Rogers ¶¶ 5–6.[4] Moreover, there is no indication that the procedures set forth in the Agreement for admitting new partners—such as taking a vote—were ever complied with in connection with the 1984 transfer of Odell's interest. *See* Defs.' Ex. B § 8.7; *see also* Lockhart Dep. at 9–10 (suggesting that no vote was ever taken to admit the Rogers defendants as new partners). Plaintiffs do not seriously dispute these assertions.

Courts look to more than subjective intent, however, in determining partner status: A person may be held to be a partner if he intends to do acts which in law have the effect of conferring the status of partner upon him. *See* 1 *Bromberg & Ribstein* § 2.05(c); 68 C.J.S. *Partnership* § 24(a); *see also Martin v. Peyton,* 246 N.Y. 213, 218, 158 N.E. 77, 78 (1927) ("Mere words will not blind us to realties. Statements that no partnership is intended are not conclusive"). Acts constituting indicia of partner status include the sharing of profits and losses of the firm, the sharing of control of the partnership, co-ownership of property, and contributions to partnership capital. *See* 1 *Bromberg & Ribstein* § 2.07.[5] Plaintiffs' argument for the Rogers defendants' partner status rests heavily on assertions that the conduct of the latter—in particular, their sharing of profits and losses of MFC Partnership—indicates their status as partners.

Under the Uniform Partnership Act, as well as under Kentucky law, the receipt of profits from a business is *prima facie* evidence that one is a partner in the business.

*See* Uniform Partnership Act § 7(4); Ky. Rev.Stat.Ann. § 362.180(4). Under both of these provisions, one may rebut this presumption by showing that one falls within a statutorily protected relationship. *See* Uniform Partnership Act § 7(4)(a)-(e); Ky. Rev.Stat.Ann. § 362.180(4)(a)-(e). Neither formulation, however, restricts rebuttal evidence to a showing of a protected relationship.

Hence, the Rogers defendants rebut the undisputed fact that they shared in the profits and losses of MFC Partnership by arguing that the July, 1984 transfer to them was no more than an assignment of Odell Rogers' partnership interest. An assignment of a partnership interest merely entitles the assignee to receive the assignor's profits from the firm, but does not entitle the assignee to interfere otherwise in the management of the firm. *See* Uniform Partnership Act § 27(1); Ky.Rev.Stat. Ann. § 362.280(1); *Thomas v. Price,* 631 F.Supp. 114, 120–21 (S.D.N.Y.1986) (construing the Texas version of § 27 of the U.P.A. closely resembling the Kentucky statute). The clear implication, of course, is that assignees of a partnership interest are not *ipso facto* partners, and cannot be held personally liable for the firm's obligations.

The Court expresses some doubt that Odell's gift amounted to a legally effective assignment. As plaintiffs note, the Rogers defendants have produced no *contemporaneous* evidence of assignment.[6] While the drafting of the Amended Agreement—om-

---

**4.** Arthur Rogers, II never executed the Amended Agreement, and therefore cannot be said to have consented to becoming a partner. James Rogers, however, did sign, although there is no dispute that he had in the past signed other documents on the instructions of his father's lawyer, simply because he was told to do so. *See* Aff. of James B. Rogers ¶¶ 4–5. Given the surrounding circumstances—i.e. that James Rogers was a 19-year-old college student who had played no prior role in the operations of Middle Fork—the Court is not inclined to regard his signature as evidence of his intent to become a partner as it would the signature of a sophisticated or experienced businessman.

**5.** There is no issue of contributions to partnership capital here.

**6.** On the other hand, the Court is not impressed by plaintiffs' contention that the designation of the Rogers defendants as general partners on the Schedule K–1s, filed with the federal tax returns of MFC Partnership, supports the view that the Rogers defendants are partners. There is no dispute that neither James Rogers nor Arthur Rogers, II ever saw or signed the Schedule K–1s. Hence, the representation to the I.R.S. that they were general partners was not a representation to which they had consented, and arguing the contrary requires bootstrapping the conclusion that they *were* partners if it is to mean anything other than that the accountant of MFC Partnership was mistaken as to their legal relationship to the partnership.

itting the name of Odell Rogers and including the names of the Rogers defendants—may be consistent with an assignment by a withdrawing partner under Kentucky law, defendants have not urged this reading of the Amended Agreement. *See* Ky.Rev. Stat.Ann. §§ 362.280(2) (assignment in connection with dissolution of the partnership), 362.290 (dissolution defined), 362.295 (partnership not terminated by dissolution). Moreover, the evidence is ambiguous on whether Odell Rogers obtained the consent of both Caleb Cooley and John Lockhart, in accordance with the Partnership Agreement, before he "assigned" his interest to his sons. *See* Defs.' Ex. B § 8.4(a)(5).[7]

The Court believes, nevertheless, that the inference of partner status to be drawn from the receipt of profits by the Rogers defendants is weak. In the circumstances of this case, the Court is impressed by the absence of evidence that the Rogers defendants played any part in the management of the affairs of MFC Partnership after July, 1984. "Although the sharing of profits and losses is prima facie evidence of a partnership, the issue of control is the more important criterion in determining the existence of a partnership." *Thomas v. Price*, 718 F.Supp. 598, 605–6 (S.D.Tex. 1989) (citing *Allen Chase & Co. v. White, Weld & Co.*, 311 F.Supp. 1253, 1260 (S.D.N.Y.1970), *aff'd* 936 F.2d 569 (5th Cir. 1991)); *see also Ryan's Coal*, 923 F.2d at 1467–68 (finding a partnership based on co-ownership of property, sharing of profits and losses, *and* active participation in the management of the business); *Martin v. Peyton*, 246 N.Y. at 218, 158 N.E. at 78 ("[A]n arrangement for sharing profits is to be considered. It is to be given due weight. But it is to be weighed in connection with all the rest. It is not decisive.").[8]

Both Arthur Rogers, II, and James Rogers have indicated in their affidavits that they did none of the acts which usually denote management or control of a partnership: request information about the firm's finances, attend its meetings or vote, attempt to its withdraw money, represent the firm to third parties, or even speak with the other partners about the firm. *See* Aff. of Arthur O. Rogers, II ¶ 7; Aff. of James B. Rogers ¶ 7. Neither James nor Arthur knew where the offices of MFC Partnership were located. *See* Aff. of Arthur O. Rogers, II ¶ 7; Aff. of James B. Rogers ¶ 7. Odell testified orally that neither Arthur nor James worked at a mine-site, or were otherwise employed by Middle Fork. Plaintiffs do not dispute these contentions. They merely note that the Rogers defendants on one occasion received "management fees" totalling $3,000, without any further showing of what these "fees" were paid for. Under the circumstances, the Court regards such evidence as no more than a mere "scintilla," upon which a jury could not reasonably find for the plaintiff. *See Anderson v. Liberty Lobby*, 477 U.S. at 251–52, 106 S.Ct. at 2512.

Thus, while there may be *some* doubt that Odell Rogers' 1984 gift to his sons effected an assignment of his partnership interest, the Court believes that, on these facts, there can be *no* doubt that the transfer conveyed *less* than full partnership status. The Court finds, in other words, that plaintiffs have failed to carry their burden of proof of showing sufficient indicia partnership from which a jury could reasonably find that the Rogers defendants were partners in MFC Partnership in April, 1987, at the time the partnership incurred withdrawal liability to the Plans. It follows that the Rogers defendants are not jointly or severally liable to the Plans as partners for Middle Fork's withdrawal liability as

---

7. Odell's sworn affidavit does state that "[i]n or about July 1984, I explained to Caleb Cooley and John Lockhart that I was giving an interest in MFC Partnership to Arthur and James." A later affidavit by John Lockhart avers that he did consent to the "gift of this partnership" to the Rogers defendants. Defs.' Ex. 1. It is unclear, however, whether Caleb Cooley also consented.

8. Thus, the Court believes that the facts here place this case within what has been regarded as an exception to the strict application of the rule presuming partnership from receipt of profits. *See* 1 Bromberg & Ribstein § 2.07(c), at 2:61 & n. 29.

**12**

determined in the Court's Order of April 18, 1991. Accordingly, the Court will enter an Order granting Defendants' Motion for Summary Judgment, denying Plaintiffs' Motion for Summary Judgment, and dismissing the case against the Rogers defendants.

SO ORDERED.