Fritzi **BICKHARDT,** Individually, and Theodore Ginsberg and Stanley Ginsberg, as Trustees, Plaintiffs,

v.

Nathaniel **RATNER,** Defendant.

No. 91 Civ. 4182 (PKL).

United States District Court, S.D. New York.

Nov. 23, 1994.

Eli Mattioli, Wien Malkin & Bettex, New York City, for plaintiffs.

Arnold L. Kert, Weinberg & Kert, Garden City, NY, for defendant.

### MEMORANDUM ORDER

LEISURE, District Judge:

This action alleges a pattern of racketeering activity, securities fraud, common-law fraud, breach of fiduciary duty, conversion, and breach of partnership agreement. Plaintiffs are Fritzi Bickhardt ("Ms. Bickhardt"), individually, and Theodore Ginsberg and Stanley Ginsberg (the "Ginsberg Trustees"), as trustees for the trust created for the benefit of Ruth Ginsberg under the Last Will and Testament of Sol Mutterperl (collectively "plaintiffs"). Defendant is Nathaniel Ratner ("Ratner").

Ratner has moved for summary judgment on all plaintiffs' securities fraud claims and on Ms. Bickhardt's common-law fraud claim.[1] Plaintiffs have cross-moved for summary judgment on the issue of whether plaintiffs and Ratner were partners.[2] For the reasons stated below, the Court grants Ratner's motion for summary judgment on plaintiffs' securities fraud claim. The Court denies Ratner's motion for summary judgment on plaintiffs' common-law fraud claim and denies plaintiffs' cross-motion for summary judgment on the issue of whether plaintiffs and Ratner were partners.

### BACKGROUND

The real parties in interest in this action are, or at one time were, family or friends of one another. Ms. Bickhardt and her husband, Ludwig Bickhardt (collectively "the Bickhardts"), had been friends with Ratner since approximately the early 1960's. Ruth Ginsberg is Ms. Bickhardt's sister. Ruth Ginsberg met Ratner through the Bickhardts.

In 1963, Ratner and others not involved in this action formed a limited partnership called L.G.R. Associates ("L.G.R."). L.G.R. was formed to own and operate certain real estate consisting of ten acres of land, upon which the Eatontown Shopping Center was eventually constructed. When L.G.R. was formed, Ratner held interests as both a general and limited partner.

In 1971, the Bickhardts provided a total of $75,000 to Ratner, $50,000 in Ms. Bickhardt's name, and $25,000 in Ludwig Bickhardt's name. Also in 1971, the Ginsberg Trustees also provided several thousand dollars to Ratner, for the benefit of Ruth Ginsberg, but the precise amount of this provision is contested.

The parties strenuously dispute the nature of these monetary transfers. Plaintiffs contend that the transfers represent payments for partnership interests in a general partnership, "Nathaniel Ratner—Nominee," that Ratner allegedly formed with plaintiffs and others to own Ratner's collective interest as a general and limited partner in the pre-existing limited partnership, L.G.R. Ratner contends that the monies that plaintiffs provided to him in 1971 were loans, rather than payments for partnership interests.

In support of their contention, plaintiffs rely (in addition to other evidence) on three letters dated May 24, 1972. In these letters, which are identical in relevant part, Ratner wrote to Ms. Bickhardt, Ludwig Bickhardt, and Ruth Ginsberg as follows:

> This will confirm the fact that you are the beneficial owner of a [percentage] participating interest in that share of L.G.R. Associates, a limited partnership, now held in my name as a general and limited partner.

---

1. Ratner also moved for summary judgment on "any other claim as it relates to damages arising out of the return of [Ms. Bickhardt's $50,000]." However, Ratner's Memorandum of Law in Support of his motions addressed only Ms. Bickhardt's common-law fraud claim. *See* Ratner's Memorandum of Law in Support at 5–8. The Court therefore does the same.

2. Plaintiffs also moved for summary judgment on their breach of fiduciary duty and breach of partnership agreement claims. However, plaintiffs made these two motions contingent on a threshold ruling that plaintiffs and Ratner were partners as a matter of law. *See* Plaintiffs' Notice of Cross–Motion for Partial Summary Judgment, at 1–2; Plaintiffs' Memorandum of Law in Opposition and Support, at 38–39. For the reasons set forth below, the Court denies plaintiffs' motion for summary judgment on the issue of whether plaintiffs and Ratner were partners. The Court therefore does not address plaintiffs' other motions.

I shall promptly remit to you your proportionate share of income and/or capital as same may be received by me.

In the event that I shall be called upon, in accordance with the terms of the Articles of Partnership, to advance additional sums, your percentage of interest will be mathematically changed, and I will undertake to advise you of the amount of the investment and of the percentage of your interest at each such time.

Notwithstanding the provisions of this letter, I shall exercise all of the powers of a general and limited partner, acting in my own name.

Complaint, Exhibit A. In support of his contention, Ratner relies (in addition to other evidence) on his averments that, from the inception of the parties' business relationship, he paid to plaintiffs, and plaintiffs accepted without objection, a constant return on their monies of 10 percent per annum.

In March 1973, Ms. Bickhardt reduced the extent of her provision to Ratner from $50,000 to $25,000. But when Ludwig Bickhardt passed away, also in 1973, Ms. Bickhardt inherited whatever rights Ludwig Bickhardt had pursuant to the $25,000 provision that he had made to Ratner in 1971, raising the extent of Ms. Bickhardt's provision to Ratner to $50,000 again, where it stood through December 1988 (excluding any alleged appreciation).

On or about January 2, 1989, after communications between Ratner and Ms. Bickhardt's attorney, and between Ratner and Ms. Bickhardt herself, Ratner returned $50,000 to Ms. Bickhardt, and Ms. Bickhardt executed a document by which she purported to relinquish to Ratner whatever interest she might then have had in the Eatontown Shopping Center. The parties strenuously dispute the circumstances and legal consequences of this transaction. Ms. Bickhardt contends that Ratner thereby defrauded her of the value of her partnership interest, to the extent that it exceeded $50,000. Ratner insists that he simply returned Ms. Bickhardt's loan principal to her and obtained from her a valid release from any further claim of entitlement.

The Ginsberg Trustees have not, prior to this action, sought to withdraw from Ratner the provision that they made to him in 1971, or any further amounts to which they may be entitled. Ratner continues to pay them a constant return per annum on the provision, although the amount of the return, like the amount of the provision itself, is disputed.

Plaintiffs filed this action on January 18, 1991. The thrust of their Complaint is that, although from 1971 onward the parties were actually partners in a general partnership called Nathaniel Ratner—Nominee, Ratner has wrongfully conducted the parties' business relationship as if plaintiffs were lenders and he was a borrower.

## DISCUSSION

"Summary judgment may be granted if, upon reviewing the evidence in the light most favorable to the non-movant, the court determines that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law." *Richardson v. Selsky,* 5 F.3d 616, 621 (2d Cir.1993). In deciding the motion, "the court is required to draw all factual inferences in favor of the party against whom summary judgment is sought." *Balderman v. U.S. Veterans Administration,* 870 F.2d 57, 60 (2d Cir.1989). "Only when no reasonable trier of fact could find in favor of the nonmoving party should summary judgment be granted." *Cruden v. Bank of New York,* 957 F.2d 961, 975 (2d Cir.1992); *accord Taggart v. Time, Inc.,* 924 F.2d 43, 46 (2d Cir.1991).

The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion" and identifying the materials in the record that "it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Once a motion for summary judgment is properly made and supported, however, the burden shifts to the nonmoving party to " 'set forth specific facts showing that there is a genuine issue for trial.' " *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986) (quoting Fed.R.Civ.P. 56(e)).

■ In a dispute involving a contract's meaning, summary judgment may be granted if the contract's language is plain and unambiguous. *Brass v. American Film Technologies, Inc.,* 987 F.2d 142, 148 (2d Cir.1993); *Seiden Assoc., Inc. v. ANC Holdings, Inc.,* 959 F.2d 425, 428 (2d Cir.1992). A contract's language is plain and unambiguous if there is " 'no reasonable basis for a difference of opinion' " as to the contract's meaning. *Hunt Ltd. v. Lifschultz Fast Freight, Inc.,* 889 F.2d 1274, 1277 (2d Cir.1989) (quoting *Breed v. Insurance Co. of North America,* 46 N.Y.2d 351, 355, 413 N.Y.S.2d 352, 385 N.E.2d 1280 (1978)).

## A. Ratner's Summary Judgment Motion on Plaintiffs' Securities Fraud Claims.

Ratner argues that summary judgment against plaintiffs is proper on their claims pursuant to Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78j(b),[3] because the statute of limitations on these claims expired prior to June 18, 1991, when plaintiffs commenced this action. Plaintiffs respond that Ratner committed acts amounting to § 10(b) violations within the applicable limitations period.

■ Section 27A of the Exchange Act provides:

(a) ... The limitation period for any private civil action implied under section 10(b) of this Act that was commenced on or before June 19, 1991, shall be the limitation period provided by the laws applicable in the jurisdiction, including principles of retroactivity, as such laws existed on June 19, 1991.

Federal Deposit Insurance Corporation Improvement Act of 1991, Pub.L. No. 102–242, § 476, 105 Stat. 2236, 2387. As of June 19, 1991, a party alleging a § 10(b) violation could recover in the Second Circuit, only if the party had commenced the action within "one year after discovery of the conduct alleged to constitute the violation, but no more than three years after the occurrence of such conduct." *Ceres Partners v. GEL Assoc.,* 918 F.2d 349, 359 (2d Cir.1990) (Kearse, J.) (stat-

ing holding of *In re Data Access Systems Securities Litigation,* 843 F.2d 1537, 1550 (3rd Cir.1988), where the Third Circuit adopted the so-called "one-year/three-year" limitations period); *Ceres,* 918 F.2d at 361 (holding that the "one-year/three-year period is the appropriate [limitations period] for actions under § 10(b)"); *see also Walsche v. First Investors Corp.,* 981 F.2d 649, 654 (2d Cir.1992) ("[A]ny claim filed after the new limitations period was announced in *Ceres* is prospectively subject to the one-year/three-year limitations period.").

■ Applying these principles to the present record, viewed in the light most favorable to plaintiffs, the Court finds that plaintiffs' § 10(b) claims are time barred.

Plaintiffs commenced this action on June 18, 1991. Therefore, under Section 27A and the Second Circuit's decisions in *Ceres* and *Walsche,* plaintiffs' § 10(b) claims are time barred if: (1) plaintiffs discovered the conduct alleged to constitute the violations prior to June 18, 1990; *or* (2) the conduct occurred prior to June 18, 1988.

The only conduct alleged to have occurred after June 18, 1988 that could possibly qualify as a § 10(b) violation is Ratner's conduct toward Ms. Bickhardt and her attorney in connection with Ms. Bickhardt's relinquishment to Ratner, on or about January 2, 1989, of whatever interest she may have had in the Eatontown Shopping Center. There is no dispute, however, that by March 1989, Ms. Bickhardt's accountant and attorney had become so suspicious of this conduct that Ms. Bickhardt's attorney wrote a letter to Ratner confronting him with allegations of impropriety. *See* Ratner Affidavit, Exhibit I. By November 1989, Ms. Bickhardt's attorney had become aware of documents that plaintiffs here allege demonstrate that Ratner's conduct was fraudulent. *See generally* Plaintiffs' Memorandum of Law in Opposition and Support at 16–18 (describing plaintiffs' version of events leading up to discovery of alleged fraud and providing citations to portions of record). Ms. Bickhardt therefore

---

3. Plaintiffs' also allege violations of Rule 10b–5, 17 C.F.R. § 240.10b–5. For convenience, however, the Court's discussion will explicitly refer only to plaintiffs' claims pursuant to § 10(b) proper.

must be held to have discovered the conduct alleged to constitute a § 10(b) violation well prior to June 18, 1990. As a result, her § 10(b) claim in connection with her relinquishment of her purported interest to Ratner is time barred, as a matter of law.[4]

To the extent that any of plaintiffs allege § 10(b) violations in connection with their purported acquisitions from Ratner in 1971 of partnership interests in Nathaniel Ratner—Nominee, their claims, filed on June 18, 1991, are obviously time barred under Section 27A(a) and the Second Circuit's decisions in *Ceres* and *Walsche*.

■ Ratner's other alleged misconduct—his failure to pay plaintiffs a return in accordance with their alleged status as his partners, for example—is not actionable under § 10(b), because this alleged misconduct was not "integral to [plaintiffs'] purchase or sale of [a] security." *Flickinger v. Harold C. Brown & Co.*, 947 F.2d 595, 598 (2d Cir.1991) (Oakes, J.) ("The securities law does not reach every conversion or theft of a security.... Section 10(b) is not violated by a fraudulent scheme that, some time after a purchase of securities, divests the purchaser of ownership.... Rather, the fraud must have been integral to the plaintiff's purchase or sale of the security.") (citing *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975)) (citations omitted).

As a result, the Court enters summary judgment against plaintiffs on their securities fraud claims.

**B. Ratner's Summary Judgment Motion on Ms. Bickhardt's Common–Law Fraud Claim.**

Ratner next argues that summary judgment against Ms. Bickhardt is proper on her common-law fraud claim, because there is no evidence that Ratner misstated or omitted any material fact in his dealings with Ms. Bickhardt, or that Ms. Bickhardt relied to her detriment on a material misstatement or omission by Ratner. Ms. Bickhardt responds that Ratner misrepresented her alleged partnership interest as a loan; that Ratner omitted to tell Ms. Bickhardt the true value of the interest; and that Ratner's misstatements and omissions induced Ms. Bickhardt to relinquish the interest to Ratner for less than its fair market value.

■ "To maintain an action based on fraudulent representations, whether it be for the rescission of a contract or ... in tort for damages, it is sufficient to show that the defendant knowingly uttered a falsehood intending to deprive the plaintiff of a benefit and that the plaintiff was thereby deceived and damaged." *Channel Master Corp. v. Aluminum Limited Sales, Inc.*, 4 N.Y.2d 403, 406–07, 176 N.Y.S.2d 259, 262, 151 N.E.2d 833, 835 (1958) (citing 3 Restatement [First of] Torts § 525; Harper and James on The Law of Torts § 7.1, at 527–28 (1956); Prosser on Torts § 86, at 523 (2d ed. 1955)) (citations omitted). "Concealment with intent to defraud of facts which one is duty-bound in honesty to disclose is of the same legal effect and significance as affirmative misrepresentations." *Nasaba Corp. v. Harfred Realty Corp.*, 287 N.Y. 290, 295, 39 N.E.2d 243, 245 (1942) (citation omitted).

New York recognizes a duty by a party to a business transaction to speak in three situations: first, where the party has made a partial or ambiguous statement ...; second, when the parties stand in a fiduciary or confidential relationship with each other ...; and third, where one party possesses superior knowledge, not readily available to the other, and knows that the other is acting on the basis of mistaken information.

*Brass v. American Film Technologies, Inc.*, 987 F.2d 142, 150 (2d Cir.1993) (Cardamone, J.) (citations omitted); *cf. Amend v. Hurley*, 293 N.Y. 587, 596, 59 N.E.2d 416, 419 (1944) ("It is not fraud for one party to say nothing on the subject where no confidential or fiduciary relation exists and where no false statements or acts to mislead the other are made.") (citations omitted). A "fiduciary relationship embraces not only those the law has long adopted—such as trustee and beneficiary—but also more informal relationships

---

4. The Ginsberg Trustees have not sold or otherwise relinquished their purported interests and, therefore, the Ginsberg Trustees have no § 10(b) claim in connection with a sale of their interest.

where it can readily be seen that one party reasonably trusted another ... close friends [for example]." *Brass*, 987 F.2d at 150–51 (citing Prosser, Handbook of the Law of Torts § 106, at 697; Restatement (Second) of Torts § 551 cmt. f. (1977)); *see also* Fowler V. Harper, et al., The Law of Torts § 7.14, at 473–74 (2d ed. 1986) ("The trustee or other fiduciary is bound to exercise reasonable care to disclose to those for whom he is acting ... because of the relation between them. And this duty has been extended to relations of trust and confidence beyond technical trusts.") (footnotes omitted); E. Allan Farnsworth, Contracts § 4.11 at 254 ("The relation need not involve one who is a true fiduciary as a matter of law ... but may, for example, be one involving trust and confidence as a matter of fact .... The one in whom trust and confidence is reposed is expected to speak up.") (footnotes omitted).

■ Viewing the present record in light of the foregoing principles, and in the light most favorable to Ms. Bickhardt, the Court finds that summary judgment for Ratner on Ms. Bickhardt's common-law fraud claim is inappropriate. The record contains evidence from which a reasonable jury could conclude that Ms. Bickhardt's provision to Ratner made her the owner of a partnership interest, not a mere lender. *See, e.g.,* Complaint, Exhibit A (letter from Ratner to Ms. Bickhardt, which states in part: "This will confirm the fact that you are the beneficial owner of a ... participating interest in that share of L.G.R. Associates, a limited partnership, now held in my name as a general and limited partner."); Kusnetz Affidavit in Opposition and Support, Exhibit D (partnership tax forms for the alleged partnership, "Nathaniel Ratner—Nominee," which appear to characterize plaintiffs as partners therein). A reasonable jury could further conclude that Ratner (falsely) represented to Ms. Bickhardt's attorney that Ms. Bickhardt was his creditor, not his partner, with the implication that Ms. Bickhardt was entitled to receive from Ratner only a $50,000 return of loan principal, rather than a $50,000 return of capital plus substantial appreciation. *Compare* Ratner Affidavit, at ¶ 7 ("In the latter part of 1988, I [Ratner] received ... correspondence and had ... communications with

... [Ms.] Bickhardt's attorney, relative to the nature of her interest.... I characterized the transaction as a loan ... and [Ms. Bickhardt's attorney] thereafter confirmed our conversation by his letter to me dated December 2, 1988....") *with* Kusnetz Affidavit in Opposition and Support, Exhibit K (letter from Ms. Bickhardt's attorney to Ratner, dated December 2, 1988, which states in part: "Thank you for your note of November 22. I had not realized that the participation was in the form of a 'loan' rather than a prorated portion of your equity interest. Given this fact, I think [Ms. Bickhardt] may wish to terminate the arrangement and receive her $50,000."). Alternatively, a reasonable jury could conclude that Ratner had, and breached, a duty to disclose to Ms. Bickhardt the true nature and full value of her interest before allowing her to relinquish that interest to him. *See, e.g.,* Ratner Affidavit at ¶ 6 ("[Ms.] Bickhardt and I were friends for years prior to our business relationship which began with her husband, Ludwig, before his death in 1973. We continued to be friends and had a pleasant social relationship throughout the years."); Bickhardt Affidavit at ¶¶ 1, 3, 5–6 ("I first met Nat Ratner ... about twenty-five years ago.... [My late husband and I] became friends with the Ratners and saw them regularly.... I trusted Nat, and he knows that.... I thought that Nat was giving me all the value he could out of my investment in the shopping center.... Based on Nat's relationship with my husband and me, and the fact that we invested with him in the shopping center, I would not have expected less."). Finally, a reasonable jury could conclude that Ms. Bickhardt relied on Ratner's omission, if not also on his misrepresentation, in accepting only $50,000 from Ratner when she purportedly relinquished her interest to him. *See* Bickhardt Affidavit at ¶¶ 2–6 ("I really do not remember how I learned that the most I would receive from Nat was $50,000, I may have received a letter from [my attorney].... I thought that Nat was giving me all the value he could give me out of my investment in the shopping center at the time, *and I took the check on that basis.*") (emphasis added). Thus, genuine issues of material fact exist.

The Court therefore denies Ratner's motion for summary judgment on Ms. Bickhardt's common-law fraud claim.

## C. Plaintiffs' Cross–Motion for Summary Judgment on the Issue of Partnership.

Plaintiffs argue that summary judgment against Ratner is proper on the issue of whether plaintiffs and Ratner were partners in an alleged partnership, "Nathaniel Ratner—Nominee." Plaintiffs assert that they *were* partners with Ratner, as a matter of law. Ratner responds that summary judgment is improper on the issue, because there is evidence in the record from which a reasonable jury could conclude that plaintiffs were merely his creditors, not his partners.

 Under New York law, a partnership is defined as "an association of two or more persons to carry on as co-owners a business for profit." *Martin v. Peyton,* 246 N.Y. 213, 218, 158 N.E. 77, 78 (1927) (Cardozo, C.J.) (citing N.Y. Partnership Law § 10). However, although "an arrangement for sharing profits is to be considered [in deciding whether persons are in partnership with one another, the existence of such an arrangement, without more,] ... is not decisive. It may be merely the method adopted to pay ... interest on a loan." *Martin,* 246 N.Y. at 218, 158 N.E. at 78; *see also Matlins v. Sargent,* 1991 WL 79219, at *2 (S.D.N.Y. May 7, 1991) (" 'The receipt by a person of a share of the profits of a business is prima facie evidence that he is a partner in the business, but no such inference shall be drawn if such profits were received in payment ... [a]s interest on a loan, though the amount of payment vary with the profits of the business.' ") (quoting N.Y. Partnership Law § 11(4)(d) (McKinney 1988)). Similarly, "part ownership [of property] does not of itself establish a partnership, whether such co-owners do or do not share any profits made by the use of the property." N.Y.

Partnership Law § 11(2) (McKinney 1988). Rather, whether persons are in partnership with one another under New York law turns on:

the intent of the parties (express or implied), whether there was joint control and management of the business, whether there was a sharing of the profits as well as a sharing of the losses, and whether there was a combination of property, skill or knowledge.

*Ramirez v. Goldberg,* 82 A.D.2d 850, 852, 439 N.Y.S.2d 959, 961 (2d Dept.1981) (citation omitted). Stated more generally, "all elements of a relationship must be considered when determining the existence of a partnership." *Matlins,* 1991 WL 79219, at *3 (citation omitted).

 Viewing the record in light of the foregoing principles, and in the light most favorable to Ratner, the Court finds that summary judgment against Ratner on the issue of whether he and plaintiffs were partners is improper. Ratner's May 24, 1972 Letters to plaintiffs (the "Letters") do not evince an unambiguous intention of the parties to enter into a partnership. Nowhere do the Letters state, in terms, that Ratner and plaintiffs were thereby entering into a partnership. *See* Complaint, Exhibit A.[5] Moreover, although the Letters characterize plaintiffs as the "beneficial owners of ... participating interest[s]" in Ratner's share of L.G.R. Associates, and the Letters state that Ratner "shall promptly remit ... proportionate share[s] of income and/or capital as [the] same may be received," *see* Complaint, Exhibit A, this language does not of itself establish a partnership. *See* N.Y.Partnership Law § 11.2 ("[P]art ownership *does not of itself* establish a partnership, whether such co-owners do or do not share any profits made by the use of the property."). Finally, the Letters contemplate the possibility that Ratner would be required to advance additional

---

5. Read in the light most favorable to Ratner, the only references in the Letters to a partnership are to the pre-existing limited partnership, L.G.R. Associates, *see* Complaint, Exhibit A, of which Ratner was once a general and limited partner, and which had written partnership articles, *see* Complaint, Exhibit B. However, plaintiffs do not assert that the Letters purport to

make them partners in L.G.R. Associates. Instead, plaintiffs contend that the Letters make them partners with Ratner in Nathaniel Ratner—Nominee, which Ratner allegedly formed with plaintiffs and others to own Ratner's interest in L.G.R. *See, e.g.,* Plaintiff's Memorandum in Opposition and Support at 6–10, 33–34.

capital to L.G.R. Associates, but the Letters strongly imply that Ratner did not intend to call upon plaintiffs to participate pro rata in these advances. *See* Complaint, Exhibit A ("In the event that I shall be called upon, in accordance with the terms of the Articles of Partnership [of L.G.R.], to advance additional sums, your percentage of interest will be mathematically changed, and I will undertake to advise you of the amount of the investment and of the percentage of your interest at each such time."). The Letters therefore do not establish that plaintiffs' business association with Ratner was a partnership as a matter of law.[6]

Furthermore, to the extent that the Letters are consistent with plaintiffs' assertion of a partnership, they are inconsistent with other evidence in the record on the point. Most importantly, there is evidence that from the inception of the parties' business relationship, Ratner consistently, and without objection, paid to plaintiffs a 10 percent return on the monies that they had provided to him. *See* Ratner Reply Affidavit at ¶¶ 2–4 (citing portions of record). Indeed, there is evidence that Ratner paid this constant percentage to plaintiffs during even the early years' of the parties' business relationship—a period during which the constant percentage payments that Ratner actually made to plaintiffs were significantly greater than the amounts to which plaintiffs would have been entitled had the monies that plaintiffs provided to Ratner been treated as equity investments rather than as loans. *See id.* This evidence of the parties' perennial practice of paying and accepting a constant percentage return would, if credited by the trier of fact, corroborate Ratners' contention that plaintiffs' relationship to him was actually that of lenders to a borrower, not of partners to a fellow partner.

Similarly, there is evidence that Ratner was eventually called upon by L.G.R. to pro-

vide additional capital to finance the initial construction of the Eatontown Shopping Center and, later, an addition thereto, and that although Ratner called on others members of the alleged partnership to contribute their proportionate shares, he did not call on plaintiffs to contribute any additional sums. *See* Ratner Reply Affidavit at ¶ 2. If credited by the trier of fact, this evidence would further corroborate Ratner's contention that plaintiffs were not his partners but merely his creditors.

The Court is therefore not persuaded that Ratner's apparent characterization of the parties' business relationship as a partnership for tax purposes, *see* Kusnetz Affidavit in Opposition and Support, Exhibit D, warrants summary judgment against Ratner on the partnership issue. This characterization is simply not consistent with the evidence, described above, as to how Ratner, and plaintiffs, actually conducted the relationship from its inception.

Against this backdrop, the Court cannot agree with plaintiffs' assertion that *Tenney v. Insurance Co. of North America,* 409 F.Supp. 746 (S.D.N.Y.1975) "is directly on point and supports a grant of summary judgment to plaintiffs," Plaintiff's Memorandum in Opposition and Support, at 36. The issue in *Tenney* was whether the daughter of a nominal partner in a partnership called Acruem Associates ("Acruem") had herself become a partner in Acruem, under the circumstances of that case. *See id.* at 746–48. Specifically, the day after the filing of a partnership certificate for Acruem, one of the partners named in the certificate

> executed a formal assignment [to his two children] by which he transferred to each one-half of his ... interest in Acruem. The letter stated that ... [the father] would remain as a nominal partner acting

**6.** *Compare Silverman v. Caplin,* 150 A.D.2d 673, 541 N.Y.S.2d 546 (2nd Dept.), *appeal dismissed without opinion,* 74 N.Y.2d 793, 545 N.Y.S.2d 109, 543 N.E.2d 752 (1989), where the Second Department found that a written agreement established a partnership as a matter of law. As described by the Court, the parties'

> handwritten contract provided, *inter alia,* that the 'agreement will be a 50–50 partnership,'

and that [defendant] was entitled to '50% of all monies taken in'. In return, [defendant] agreed to pay the plaintiff [specified amounts of capital] over a four-year period. Moreover, [defendant] agreed to pay 50% of all rental fees and costs associated with goods purchased. *Silverman,* 150 A.D.2d at 674, 541 N.Y.S.2d at 547.

solely as [the children's] nominee and would make all decisions with respect to the partnership and its property. [The other two partners in Acruem] were informed of this arrangement prior to the formal execution of the partnership articles. [Also prior to the execution of the partnership articles, the daughter] paid directly to the partnership her pro-rata share of the initial capital contribution. From time to time thereafter ... she made pro-rata payments required of partners as loans to the partnership, and she received income distributions from the partnership directly. [Finally, after a major fire, the daughter] paid through her father [substantial sums] for personal injury claims and ... for legal fees as her pro-rata share of the settlement of Acruem's liabilities.

*Id.* at 748. Thus, the only respect in which the daughter in *Tenney* could be said not to have been a partner of Acruem was that her father was to be her voice in the partnership's governance. But this circumstance, without more, was insufficient to deprive the daughter of partner-status. *Id.* at 749.

There was no claim in *Tenney* that the father and the daughter had entered into a partnership among themselves. Rather, the daughter's claim—successful on the facts of that case—was that she had become a partner in Acruem. But plaintiffs' claim in this case is the reverse. They allege that they and Ratner entered into a partnership among themselves (including the other members of Nathaniel Ratner—Nominee), not that they became partners in L.G.R. Associates. *See, e.g.,* Plaintiff's Memorandum in Opposition and Support, at 6–10, 33–34. Moreover, not only were plaintiffs in this case never given a voice in the governance of L.G.R. Associates or of the alleged partnership with Ratner, there is evidence, described above, that plaintiffs were neither requested nor required to contribute pro rata to the construction of the Eatontown Shopping Center or the addition thereto. There is also evidence, described above, that plaintiffs were never paid pro rata shares of the alleged partnership's income. Instead, according to Ratner, he paid, and plaintiffs accepted without objection, constant percentage payments that happened

sometimes to be greater, and sometimes to be less, than the amounts to which plaintiffs would have been entitled as partners in the alleged partnership, Nathaniel Ratner— Nominee. *Tenney* is therefore inapposite.

In summary, the Court finds that the Letters on which plaintiffs so heavily rely do not unambiguously manifest the parties' shared intention to enter into a partnership with one another. Furthermore, there is other evidence in the record from which a reasonable jury could conclude that the true nature of the parties' relationship was that of lenders to a borrower, not of partners to a fellow partner. As a result, summary judgment against Ratner is improper on the issue of whether he and plaintiffs were partners.

The Court therefore denies plaintiffs' motion for summary judgment against Ratner on the issue of whether he and plaintiffs were partners.

**D. A Possible Jurisdictional Defect.**

Finally, the Court brings to the parties' attention the

well-established [principle] that an action at law may not be maintained by one partner against another for any claim arising out of the partnership until there has been a full accounting except where the alleged wrong involves a partnership transaction which can be determined without an examination of the partnership accounts.

*Kriegsman v. Kraus, Ostreicher & Co.,* 126 A.D.2d 489, 511 N.Y.S.2d 17 (1st Dept.1987) (plaintiff's claims, including fraud, breach of fiduciary duty, and embezzlement, necessitated inspection of books and accounts and so must be resolved in an accounting); *see generally* Alan R. Bromberg and Larry E. Ribstein, 2 Bromberg & Ribstein on Partnership § 6.08 (1991) (discussing general rule and exceptions, and collecting authorities). The Court is concerned that, if the foregoing principle applies to this action at all, it may deprive this Court of subject matter jurisdiction over at least some of plaintiffs' claims. The Court will hear from the parties on this issue informally at the pre-trial conference scheduled below. Then, if the Court deems it necessary, the Court will request that the

parties submit formal papers addressing the issue.

## CONCLUSION

Ratner's motion for summary judgment on plaintiffs' § 10(b) claims is HEREBY GRANTED. Ratner's motion for summary judgment on Ms. Bickhardt's common-law fraud claim is HEREBY DENIED. Plaintiffs' cross-motion for summary judgment on the issue of whether plaintiffs and Ratner were partners is HEREBY DENIED. The parties to this action shall appear before this Court on December 16, 1994 at 10:30 AM for a pre-trial conference, at which they shall be prepared to discuss the extent, if any, to which this Court has subject matter jurisdiction over plaintiffs' claims.

**SO ORDERED.**